SUTTON, TRUSTEE OF ESTATE OF HILLSBORO DREDGING COMPANY, BANKRUPT, *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 307.   Argued April 29, 1921.—Decided June 1, 1921.

1. Acts appropriating specific amounts for the improvement of a navigable channel and for "completing" the improvement, with provision for using the fund in the prosecution of the work if in-

·sufficient to complete it, (River and Harbor Act, c. 253, § 8, 37 Stat. 233), do not authorize the Secretary of War to· contract to expend more than the amounts appropriated; and his contract to do so would not bind the Government. (Rev. Stats., § 3733; Act of June 30, 1906, c. 3914, § 9, 34 Stat. 764.) P. 578.

2. An appropriation for the preservation and maintenance of existing river and harbor works and for the prosecution of work previously authorized, is not applicable to pay for work theretofore done under and in excess of a prior appropriation, and when so misapplied the amount paid may be deducted from a balance owing the contractor under another contract. P. 579.

3. A contract for dredging and excavating at unit rates specified the materials to be' removed at estimated amounts which, if correctly estimated, would have been covered by the appropriation, and provided that Government inspectors should keep a record of the work done, which was to be within the limits of the funds available. Relying upon erroneous estimates of an inspector, the contractor did more work than the appropriation would pay for before the error was discovered and the operations stayed. *Held*, that, there being no authority to contract in excess of the appropriation, no contract of the Government to pay the fair value of the excess work could be implied, either because the contractor was thus misled into doing it or from the subsequent use of the excavation by the Government. P. 580.

4. If, through mistake of the Government's representatives, more work is done, and work is continued for a longer period, than was contracted for or authorized, the cost of Government superintendence incident to the mistake should not be taken from the appropriation at the expense of the contractor. P. 581.

55 Ct. Clms. 193, affirmed with modification.

The case is stated in the opinion. ·

*Mr. John B. Sutton,* with whom *Mr. M..Walton Hendry* was on the brief, for appellant.

*Mr. Frank Davis, Jr.,* Special Assistant to the Attorney General, with whom *Mr. Geo. T. Stormont* and *Mr. Wm. D. Harris* were on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The River and Harbor Act of July 25, 1912, c. 253, 37 Stat. 201, 209, made this appropriation: "Improving channel from Clearwater Harbor through Boca Ceiga Bay to Tampa Bay, Florida: Completing improvement and for maintenance, twenty thousand dollars." Sealed proposals were solicited, and on January 21, 1913, a contract was made by the War Department with the Hillsboro Dredging Company to do work at unit rates for dredging soft material and for excavating rock. The appropriation was ample to defray the cost at these rates, assuming that the quantities of material to be removed did not greatly exceed the estimates presented by the specifications. It was provided by the contract that United States "inspectors will keep a record of the work done" and also that, "within the limits of available funds the United States reserves the right to require the removal of such yardage as will complete the work . . . be it more or less than the quantity above estimated. . . ."

Work was begun under the contract in June, 1913, and payments were made monthly on estimates of the government inspector. Upon these estimates both the Government and the contractor relied. About May 15, 1914, it was discovered that through a mistake of the inspector so much work had already been done that, if paid for at the unit rates, it would call for an amount far in excess of the appropriation available. The government engineer in charge ordered operations discontinued immediately; and this contractor had no further connection with the work. The work already done amounted at the unit price to $25,032.31. The aggregate appropriation available for the improvement—including an additional $3,000 made by Act of March 4, 1913, c. 144, 37 Stat. 801, 809—was $23,000. Against this appropriation the Gov-

ernment charged $1,732.90 for superintendence and office expenses. The balance—$21,267.10—it paid to the contractor, leaving unsatisfied a claim, at the unit rates, of $3,042.74, for material dredged or excavated, and a further claim of $1,551 for the cost of blasting rock which was not removed because of the order to cease work. To recover these sums the assignee in bankruptcy of the Hillsboro Company brought this suit in the Court of Claims. That court entered judgment for the Government, 55 Ct. Clms. 193; and the case is here on appeal.

*First.* It is urged that the Secretary of War was authorized by Congress to make, and that he did make, a contract with the Hillsboro Company not only to proceed with the work, but for its completion; and that the United States is, therefore, liable, even though the appropriation proved to be insufficient. Two appropriations had been made for this project before the Act of 1912 above referred to; one by Act of June 25, 1910, c. 382, 36 Stat. 630, 644, of $29,500, for "improving channel from Clearwater Harbor"; the other by Act of February 27, 1911, c. 166, 36 Stat. 933, 941, of a like amount for "completing improvement." The Act of 1912 provided by § 8 (37 Stat. 233) that "whenever the appropriations made, or authorized to be made, for the completion of any river and harbor work shall prove insufficient therefor, the Secretary of War may, in his discretion, on the recommendation of the Chief of Engineers, apply the funds so appropriated or authorized to the prosecution of such work." But by none of these acts was any authority conferred upon the Secretary of War to complete the improvement or to contract to expend more than the amount then appropriated. On the other hand, § 3733 of the Revised Statutes provides that no contract "for any public improvement . . . shall bind the Government to pay a larger sum of money than the amount in the Treasury appropriated for the specific purpose." See

also §§ 3732 and 5503. And the Act of June 30, 1906, c. 3914, provides by § 9 (34 Stat. 697, 764) that "No Act of Congress hereafter passed shall be construed . . . to authorize the execution of a contract involving the payment of money in excess of appropriations made by law, unless such Act shall in specific terms declare an appropriation to be made or that a contract may be executed." The Secretary of War was, therefore, without power to make a contract binding the Government to pay more than the amount appropriated. See *Bradley* v. *United States*, 98 U. S. 104, 113, 114. Those dealing with him must be held to have had notice of the limitations upon his authority. But there is nothing in the contract indicating a purpose to bind the Government for any amount in excess of the appropriation. On the contrary, it limits to the amount of the appropriation the work which may be done.

By Act of October 2, 1914, c. 313, 38 Stat. 725, Congress appropriated the sum of $20,000,000 "to be expended under the direction of the Secretary of War and the supervision of the Chief of Engineers, for the preservation and maintenance of existing river and harbor works, and for the prosecution of such projects heretofore authorized as may be most desirable in the interests of commerce and navigation, and most economical and advantageous in the execution of the work." Out of the sum so appropriated $12,000 was allotted by the Secretary for completing the Clearwater Harbor Improvement; and out of this sum there was paid to the contractor in November, 1914, $3,046.44, being the unpaid balance at unit prices for the material removed prior to May 15, 1914. This payment was later disallowed by the auditor for the War Department and the Comptroller of the Treasury and was deducted from payments made to the contractor under a wholly different contract for work in North and South Carolina. It is clear that the Act of 1914 did not

authorize the application of any part of the appropriation to work theretofore done. The payment therefrom having been unauthorized, did not bind the Government; and if it was entitled to recover the money, the method pursued in doing so was proper. *Wisconsin Central R. R. Co.* v. *United States,* 164 U. S. 190; *Grand Trunk Western Ry. Co.* v. *United States,* 252 U. S. 112.

*Second.* It is contended that since the contract provided that the government "inspectors will keep a record of the work done," since their estimates were relied upon by the contractor, and since by reason of the inspector's mistake the contractor was led to do work in excess of the appropriation, the United States is liable as upon an implied contract for the fair value of the work performed. But the short answer to this contention is that since no official of the Government could have rendered it liable for this work by an express contract, none can by his acts or omissions create a valid contract implied in fact. The limitation upon the authority to impose contract obligations upon the United States is as applicable to contracts by implication as it is to those expressly made. Nor did the subsequent use of the excavation by the Government imply a promise to pay for it if at any time thereafter Congress should appropriate money to be applied in completing the improvement. "Whenever a structure is permanently affixed to real property belonging to an individual, without his consent or request, he cannot be held responsible because of its subsequent use. It becomes his by being annexed to the soil; and he is not obliged to remove it to escape liability. He is not deemed to have accepted it so as to incur an obligation to pay for it, merely because he has not chosen to tear it down, but has seen fit to use it." *United States* v. *Pacific Railroad,* 120 U. S. 227, 240. And the work here in question was not done with the consent or at the request of the United States; for neither the government inspectors

nor the Secretary of War had authority either to obligate the Government or accept voluntary services. See Rev. Stats., § 3679, as amended March 3, 1905, c. 1484, § 4, 33 Stat. 1257, and February 27, 1906, c. 510, § 3, 34 Stat. 48.

There is no necessity to consider what may be the equitable rule where there is a claim of unjust enrichment through work done upon the land of another under a mistake of fact. See *Bright* v. *Boyd,* 1 Story, 478; 2 Story, 608; *Williams* v. *Gibbes,* 20 How. 535, 538; *Canal Bank* v. *Hudson,* 111 U. S. 66, 82–83; *Armstrong* v. *Ashley,* 204 U. S. 272, 285. Nor need we consider whether the doctrine is ever applicable to transactions with the Government. For the right to sue the United States in the Court of Claims here invoked must rest upon the existence of a contract express or implied in fact. *United States* v. *North American Transportation & Trading Co.,* 253 U. S. 330, 335.

*Third.* While the contractor cannot recover for work done in excess of the appropriation he is entitled to payment to the extent of the available appropriation. The amount appropriated was $23,000. The contractor received only $21,267.10. It appears that the balance, $1,732.90, was applied to superintendence and office expenses; and the findings of fact state that the contractor "was charged with expenses of inspection during an extension of time beyond the contract period amounting to $722.47." The appropriate expense of superintendence is clearly chargeable against the appropriation. But if through mistake of the Government's representatives more work is done, and work is continued for a longer period than was contracted for or authorized, the expenses of superintendence incident to the mistake should be borne by the Government; and the contractor should not be made to suffer by the depletion of the appropriation. The fund otherwise available for work actually performed should be applied to that purpose.

The findings of fact leave us in doubt whether there has been charged against this appropriation any sum for superintendence in excess of amounts properly chargeable; and counsel were unable to remove these doubts, to which attention was called at the argument. Unless the parties can agree as to the facts, the case should be remanded to the Court of Claims to determine what, if any, amount was erroneously charged against the appropriations aggregating $23,000; and for the amount of such improper charges, if any, judgment should be entered for the petitioner. Except as stated the judgment is

*Affirmed.*