Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff seeks to recover an amount which it paid on account of injuries sustained by one of its employees.
On June 19, 1931, plaintiff sold a tract of land in Chicago to the defendant for use as a post office site. In the deed plaintiff reserved to itself, for use as a part of its railroad station, a perpetual subsurface easement for the first seventeen feet above the railroad tracks running through the premises conveyed. On the following day, plaintiff and defendant as a part of the same transaction entered into a. contract which contained the following provisions:
The United States shall include in its proposed building or buildings and thereafter maintain and operate at *156 its own expense an adequate system of ventilation to remove the smoke, fumes, and gases emitted from steam locomotives, gas engines or other engines or appliances, such as shall be agreed upon between the Chief Engineer of the Station Company and the Supervising Architect of the Treasury Department of the United States. *****
The United States agrees to require its contractor or contractors for the erection of the substructure and building or buildings to be erected on said land to furnish adequate indemnity bond or bonds, or to provide otherwise, to secure and save harmless the Station Company and/or its proprietary and tenant companies and others from any damage or injury to persons and/or property which may result from the operations of said contractors in connection with the construction of said substructure and building or buildings.
Defendant’s architects designed a ventilating system to carry out the first paragraph of the contract quoted above and, after various conferences between plaintiff’s chief engineer and defendant’s architects, a design was agreed upon which met the approval of both parties. Defendant’s contractor proceeded with the construction of the building, including the ventilating system. The building was constructed in two sections, the westerly and easterly sections. By February 1,1933, the westerly section had been completed, including the permanent ventilating system which was then in operation. In addition to the subsurface area under the building as to which plaintiff had reserved a perpetual easement, plaintiff had a further area adjacent thereto which it likewise used in its station operations. This latter area was under Canal Street but it was not included in the deed for the post ofiice site nor referred to in the contract between the plaintiff and defendant. However, in designing and installing the ventilating system, defendant made provision for the removal of smoke and gases from that area and that portion of the ventilating system was in operation at the time the accident hereinafter referred to occurred in that area.
On February 6, 1933, one of the plaintiff’s employees was injured while driving a tractor and loaded mail truck in the Canal Street area. At the time of the accident, the employee’s vision was obstructed by smoke and vapor from a *157 train standing on a track in that area. The employee brought suit and recovered a judgment against plaintiff for $11,950. In addition, plaintiff paid certain attorneys’ fees in the defense of the suit, medical expenses of the employee, and wages to the employee during his period of confinement. The total amount so paid, including the judgment and these other expenses, was $17,468.23. No notice was given by plaintiff to defendant of the pendency of that suit. Plaintiff in this suit seeks to recover that amount on the ground that defendant breached its contract by failing to install an adequate ventilating system and because of such breach defendant is required under the contract to indemnify plaintiff for the loss which it sustained in being required to make payments on account of this injury to its employee.
We do not think that the defendant has breached its contract.
Under the contract defendant agreed to “include in its proposed building or buildings and thereafter maintain and operate at its own expense an adequate system of ventilation * * * such as shall be agreed upon between the Chief Engineer of the Station Company [plaintiff] and the Supervising Architect of the Treasury Department of the United States.” ' About three months prior to the execution of the contract, preliminary negotiations were going on between the plaintiff and defendant with respect to the purchase of this site and the problem of having the post-office building erected over the subsurface area where plaintiff’s railroad tracks were located. Both the plaintiff and the defendant recognized the difficulties in installing a ventilating system in the subsurface area. The same problem had arisen in only two or three prior instances and difficulties were encountered in their solution.
The defendant employed a reputable firm of architects to design a ventilating system and the plaintiff cooperated with defendant’s representatives and these architects in the design both prior to and subsequent to the execution of the contract. The record shows that defendant’s architects and representatives conferred with plaintiff’s chief engineer relative to the details of the system and made changes and additions which plaintiff’s engineer considered necessary in the *158 design of an adequate ventilating system. The system was installed in accordance with the design as thus prepared and agreed upon and was in operation at the time of the accident.
The defendant has continued to make improvements in the system pursuant to its obligation to install, maintain, and operate such a ventilating system as was agreed upon between its architects and the chief engineer of plaintiff.
We are of the opinion that defendant met its obligations within the reasonable contemplation of the parties. Plaintiff’s position is unreasonable as shown by the testimony of two of its witnesses. One witness testified that the system was inadequate because it failed to remove the smoke and gases immediately from the subsurface area and another witness on cross-examination admitted that it would be impossible in his opinion to install a system which would accomplish that complete purpose. The agreement must be interpreted in the light of the parties’ intention, and what they sought to accomplish, and not as contemplating some impossible or impractical undertaking.
We are unable to find from the contract or acts of the parties any breach for which the defendant could be held liable for the accident to plaintiff’s employee. It is true that the ventilating system, agreed upon by defendant’s; architects and plaintiff’s chief engineer, did not accomplish as much as they had hoped but the defendant proceeded, pursuant to its obligations, to make further improvements in the ventilating system as situations developed.
A different question would have been presented had this suit been for a failure on the part of the defendant to make an installation which plaintiff requested or for failure to-make improvements desired by plaintiff. Plaintiff contends, that any approval given by its chief engineer and its other representatives was only a qualified approval of the character referred to in the chief engineer’s letter of February 12,1932,. which is set out in finding No. 6. However, that letter does not indicate lack of approval of the design. It seeks to protect plaintiff against any defects or deficiencies in the system which might later develop. In other words, the chief engineer is saying that he is approving the design as modified in accordance with his suggestions as the “best design” but. *159 that, in the event the system as installed proves inadequate in any particular, his approval must not be construed as relieving the defendant of its obligation to make further improvements therein.
However, plaintiff is not asking in this suit that improvements be made in the system, or that it be made whole on account of deficiencies which it corrected. It seeks reimbursement for an amount which it paid out in a tort action brought against it by one of its employees.
Since the defendant is not suable in tort without its consent, and no general consent has been given, the right of recovery, if it exists, must come from express contract provisions, and cannot arise by implication of law. Sutton v. United States, 256 U. S. 575; Enid Milling Company v. United States, 64 C. Cls. 396.
Plaintiff contends that such an express provision is contained in the contract wherein—
The United States agrees to require its contractor or contractors for the erection of the substructure and building or buildings to be erected on said land to furnish adequate indemnity bond or bonds, or to provide otherwise, to secure and save harmless the Station Company and/or its proprietary and tenant companies and others from any damage or injury to persons and/or property which may result from the operations of said contractors in connection with the construction of said substructure and building or buildings.
This, however, relates to damage or injury to persons or property which might result from the operations of the contractor in connection with the construction of the building, whereas the accident with which we are concerned did not occur in connection with the construction of the building and defendant’s contractor was in nowise connected therewith. When the accident occurred the section of the building adjacent to the scene of the accident had been completed and a ventilating system for that section, including the subsurface area extending beyond which included the scene of the accident, had been completed and was in operation. An obligation for the contractor to furnish an indemnity bond or to provide otherwise to save plaintiff harmless from injuries to persons during, the period of construction could not *160 be extended to make defendant liable for injuries sustained by plaintiff’s employees which were in no sense connected with the construction of the building. The accident to plaintiff’s employee did not occur in the subsurface area beneath the building which was constructed on land acquired from plaintiff. It occurred on an adjacent area for which defendant undertook to provide a ventilating system when •carrying out its obligation under the contract to provide a ventilating system.
In order to hold defendant liable it would be necessary to imply an agreement on the part of defendant to remove the smoke from the adjacent area and also to imply an agreement to save the plaintiff harmless from any tort action which might arise because of inadequacies in the ventilating system. We are unwilling to so hold. Express contract provisions would be necessary to raise such unlimited tort liability. They are not present in this case.
In view of what we have said, it becomes unnecessary to •consider the further defenses offered by the defendant.
The petition is dismissed. It is so ordered.
MaddeN, Judge; WhitakeR, Judge; and LittletoN, Judge, concur.
JoNes, Judge, took no part in the decision of this case.