### UNITED STATES v. GOODWIN.

#### Civil Action No. 511.

District Court, D. Nebraska,
Omaha Division.

April 30, 1946.

Joseph T. Votova, U. S. Atty., of Omaha, Neb., for plaintiff.

A. C. R. Swenson, of Omaha, Neb., for defendant.

DONOHOE, District Judge.

This is an action by the United States against Gladys D. Goodwin to recover the sum of $3,425, representing wages paid to the defendant as an employee of the Home Owners' Loan Corporation, between July 1, 1938, and January 31, 1941, plus interest on the aforesaid sum.

It is alleged in the complaint that the defendant, although a resident of Douglas County, Nebraska, was in fact an alien and a citizen of Great Britain during all of the time in question. By an amendment granted with leave of court, under rule 15 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the plaintiff alleges that at no time before January 31, 1941, had the defendant filed a "Declaration of Intention" to become a citizen of the United States.

It is further alleged in the complaint that payment of the sum of $3,425 as wages to the defendant, and the defendant's acceptance thereof, was erroneous and illegal on the ground that payments for the fiscal year 1939, beginning on July 1, 1938, were in contravention of Public Law No. 534, 52 Stat. 435, Sec. 5, prohibiting payment of appropriated moneys to aliens. It is also charged that payments to the defendant during the fiscal year 1940, beginning on July 1, 1939, were in contravention of Public Law No. 8, 53 Stat. 550, Sec. 5, prohibiting payment of appropriated moneys to aliens, and "that payments for the fiscal year 1940, beginning July 1, 1939, were in contravention of Public Law No. 459, 54 Stat. 141, Sec. 4, which prohibits the payment of appropriated monies to aliens." (Through a typographical error, the fiscal year 1940, beginning on July 1, 1939, appears to have been erroneously used instead of the fiscal year 1941, beginning July 1, 1940.)

The complaint alleges that the payments to the defendant were made as the result of a false citizenship statement certified by the defendant for the purpose of securing employment with the Home Owners' Loan Corporation; that the statement was made in the defendant's application for employment; and that the falsity of the statement was unknown to the plaintiff, or its agents or employees, and that they relied on the defendant's statement that she was a citizen of the United States.

The plaintiff also alleges that the defendant is not exonerated from refunding the money in question because the defendant knowingly and intentionally made a false statement relative to her citizenship status for the purpose of obtaining federal employment in contravention of the statutes previously mentioned, and that therefore the defendant can not be regarded as having acted in good faith within the Act of April 11, 1941, as amended by the Act of May 2, 1942, 56 Stat. 266.

The following facts have been stipulated:

1. The defendant, during the years of 1938, 1939 and 1940, and during the month of January, 1941, was employed as a receptionist and stenographer by the Home Owners' Loan Corporation, a corporation organized and existing under an Act of Congress.

2. During such period of time, the defendant was paid by the Home Owners' Loan Corporation the sum of $3,425.00 as compensation for her services.

3. During all of this period of time, the defendant was an alien and a citizen of Great Britain.

4. The defendant emigrated to the United States from Great Britain with defendant's parents when defendant was two years old.

5. The defendant's father filed a "Declaration of Intention" to become an American citizen, but failed to complete his naturalization.

6. During all the period of time in which the defendant was employed by the Home Owners' Loan Corporation, the defendant was a married woman, and the wife of Ray R. Goodwin.

7. Ray R. Goodwin was at all times a citizen of the United States, having acquired his citizenship by birth.

8. On December 23, 1940, but at no time prior thereto the defendant filed a "Declaration of Intention" to become a citizen of the United States.

9. On September 30, 1941, the defendant was naturalized as a citizen of the United States.

10. The services rendered by the defendant to the Home Owners' Loan Corporation during the defendant's employment were at all times faithful and competent.

11. The fair and reasonable value of the defendant's services to the Home Owners' Loan Corporation was fully equal to the amount paid to the defendant.

The case having been submitted to the court, a trial by jury having been waived, the court makes the following special findings of fact in addition to those which have been stipulated:

Findings of Fact

1. On January 2, 1934, the defendant married Ray R. Goodwin, an American-born citizen, and thereupon mistakenly as-

sumed that she had become a citizen of the United States by reason of her marriage.

2. On January 8, 1935, the defendant entered the employment of the Home Owners' Loan Corporation in the city of Omaha, Nebraska, and remained in that employment until March 26, 1941.

3. In applying for employment with the Home Owners' Loan Corporation, the defendant certified to the correctness of an Application for Employment containing statements that the defendant was a citizen of the United States, and that she was born in Council Bluffs, Iowa.

4. The making of the statements in the Application for Employment regarding defendant's citizenship was motivated by necessitous circumstances surrounding the defendant and her family.

5. Between July 1, 1938, and January 31, 1941, the defendant was paid and received as wages for services performed for the Home Owners' Loan Corporation the sum of $3,425.

### Discussion

The government's claim to recover in the instant action grows out of, and is founded upon, the following language appearing in the Appropriation Act for the fiscal year 1939, commencing on July 1, 1938:

"Sec. 5. No part of any appropriation contained in this Act or authorized hereby to be expended shall be used to pay the compensation of any officer or employee of the Government of the United States, or of any agency the majority of the stock of which is owned by the Government of the United States, whose post of duty is in continental United States unless such person is a citizen of the United States, or a person in the service of the United States on the date of the approval of this Act who being eligible for citizenship has filed a declaration of intention to become a citizen or who owes allegiance to the United States." Public Law No. 534, 52 Stat. 435, Sec. 5.

Language similar to that just quoted appears also in the Appropriation Acts for the fiscal year 1940, commencing on July 1, 1939, and for the fiscal year 1941, commencing on July 1, 1940. See Public Law No. 8, 53 Stat. 550, Sec. 5, and Public Law No. 459, 54 Stat. 141, Sec. 4.

In support of its case, the government has cited numerous decisions by the federal courts, and also by the Supreme Court of Nebraska. All of the cited cases have been examined, particularly those in the federal courts since the instant action arises under the laws of the United States, and is therefore governed by federal law. See D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Co., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, and Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838.

While the cited cases do announce well recognized principles which have been applied to permit recovery by the government of public funds which have been erroneously or illegally paid out, or to bar recovery against the government under illegal or void contracts, all of the cases are clearly distinguished on the facts from the instant action. An examination of these cases shows that they fall within one or the other of two classes.

First, there are the cases, such as Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403, upon which the government especially relies, wherein one party to an illegal or invalid contract has himself performed his part of the agreement, and is attempting to recover from the government, either on the express contract or on one implied in fact. In these circumstances, where the contract is void as being in violation of a statute, or as being one beyond the powers of the government or governmental agency, recovery against the government is uniformly denied.

Most of the remaining cases cited by the government fall into what may be termed a second class, made up of cases involving recovery by the government of funds paid out to veterans or members of the armed forces. In as much as these payments are recognized as being in the nature of gratuities, recovery thereof by the government is permitted where the payments were unauthorized, or were improperly made under a mistake of law or fact.

It is significant that none of the cases which have been cited, or which have been found by the court, have expressly or by necessary implication recognized that the government might recover funds paid out by it under a completely executed contract for labor and services, as to which the government has had and retains the benefit, even if the contract of employment under which the services were performed might be tainted with illegality.

There is a clear and vital distinction between the cases upon which the government relies and the instant case. In this case, the contract has been completely executed and performed on both sides, and the government has accepted and must now necessarily retain the benefit of the defendant's services—services for which the defendant received efficiency ratings of "Excellent" and "Very good" during all of the time in question. Nevertheless, the government, if successful in this action, would appropriate to its own use and benefit all of the services performed by the defendant over a period of approximately two and one-half years, and deprive the defendant of all compensation therefor merely because the defendant, finding that she was in need of employment and that it was difficult to obtain, stated in an application that she was a citizen of the United States, when in fact she was a citizen of Great Britain. In these circumstances, there is neither law nor equity in the government's case.

While the previously quoted provisions of the Appropriation Acts disclose an intention by Congress to prohibit the payment of appropriated funds to aliens, and to exclude them from the public payrolls during the period of time now in question, these provisions did not have the effect of depriving the United States, or its governmental agencies, of power or capacity to contract with aliens. That Congress did not intend such effect is evident from the Act of April 11, 1941, 55 Stat. 136, expressly permitting employees, such as the defendant, to retain moneys paid to them as wages, notwithstanding provisions in the previous Appropriation Acts, if the payments were found not to be due to any lack of good faith on the part of the payee. By

virtue of the express provisions of the Act of April 11, 1941, the payment of such funds as wages to the defendant, even though an alien, might have been validated by a finding by the proper authority that there was no lack of good faith by the defendant.

However, the fact that there has been no such finding in the defendant's favor is not alone conclusive with respect to whether the government may recover in this action.

Under the circumstances of this case, the contract of employment between the defendant and the Home Owners' Loan Corporation, while valid at its inception, was rendered invalid and illegal during the period of time now in question by virtue of the previously quoted provisions of the Appropriation Acts. The contract, however, was not malum in se or prohibited by law under a penalty rendering its making a penal offense, and such contract has been completely executed on both sides. Furthermore, it was within the power of the government, through the Home Owners' Loan Corporation, to make the contract.

With reference to the government's contention that the funds paid to the defendant as wages may now be recovered on the ground that payment thereof was in violation of the provisions of the Appropriation Acts prohibiting payment of public funds to aliens, the applicable rule may be stated in the following language: Where the goverment, or an agency thereof, has the corporate power to make a contract, and the contract, although invalid and unenforceable, has been executed, and the government has accepted and holds the benefits of its execution, and has paid therefor, the government may not, while retaining the benefits, recover back the money which it has paid. See Vincennes Bridge Co. v. Board of County Commissioners of Atoka County, Oklahoma, 8 Cir., 248 F. 93–102. In Western Union Telegraph Co. v. Burlington & Southwestern R. Co., C.C.Iowa, 11 F. 1, the court, quoting from a prior opinion, said at page 5:

" 'No case has been cited in argument, nor have I been able to find one, which holds that a court of equity, having jurisdiction of the parties to and the subject-

matter of an illegal contract should require one of such parties to give up what he has received under it, without requiring the other to do the same thing. Many cases hold that a corporation which has made a contract ultra vires, which has not been fully performed, is not estopped from pleading its own want of power when sued upon such contract; but that doctrine does not apply to a case where a party comes into a court of equity, and, while retaining all that he has received upon such a contract, asks to be permitted to retake what he has parted with under it. I take it there is nothing in the law, as there is certainly nothing in the principles of equity, to estop the court from saying that the obligation to return the property transferred under these contracts is mutual, and shall not be enforced against one of the parties without being at the same time enforced against the other. As the parties and subject-matter are now before the court, it is the duty of the court, as far as possible, to place them in statu quo.' "

The government alleges in its complaint that the payments to the defendant were made as the result of false statements by the defendant concerning her citizenship, and that the government relied on these statements, and did not know that they were false.

 These allegations, construed as a charge of fraud, do not entitle the government to recover in this action, even if the truth of such allegations were admitted. It is the established rule that one seeking damages or relief on the ground of fraud must show that he has been damaged by the false representation. See 37 C.J.S., Fraud, § 103, and cases there cited in footnote 54.

Since it has been stipulated that the reasonable value of the defendant's services was fully equal to the amount paid to the defendant as wages, and since the government has had and retains the benefits of such service, it is apparent that the government has not made a case for recovery on the ground of fraud.

These principles are decisive in the instant case, and render it unnecessary for the court to consider the remaining arguments of the litigants.

## Conclusions of Law

1. The contract of employment between the defendant and the United States, through the Home Owners' Loan Corporation, was illegal and invalid during the period of time now in question.

2. Since the contract has been completely executed and performed on both sides, and the government has received and retains the full benefit of the defendant's services, the parties will be left where they were found by the court. Consequently, the government can not recover in this action.

In keeping with these Findings and Conclusions, judgment is this day being entered directing the dismissal of the action of the plaintiff.