**UNITED STATES v. CITY AND COUNTY OF SAN FRANCISCO.**

Civ. No. 27851–H.

United States District Court
N. D. California, S. D.
May 15, 1953.

Chauncey Tramutolo, U. S. Atty., San Francisco, Cal., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Dion R. Holm, City Atty. of the City and County of San Francisco, A. Dal Thomson, Public Utilities Counsel, San Francisco, Cal., for defendant.

MURPHY, District Judge.

By the Raker Act of Dec. 19, 1913, P.L. 41, 63rd Cong., 38 Stat. 242, the United States granted to the City and County of San Francisco, California, certain public lands and rights-of-way over additional public lands in the Yosemite National Park and the Stanislaus National Forest. The Act was designed to and did enable the City to utilize the natural resources and facilities of Yosemite and Stanislaus in the construction of water reservoirs and electric power systems. The following conditions, among others, were attached to the grants: the City was to build and assign to the United States certain roads and trails between specified points in Yosemite National Park, Raker Act, secs. 7, 9(p), to pay to the United States yearly sums ranging from Fifteen Thousand Dollars, ($15,000), to Thirty Thousand Dollars, ($30,000), during the term of the grant, which sums were to be earmarked for building and maintenance of improvements in national parks located in California, sec. 7, and finally to reimburse the United States for the actual cost of maintenance of the roads specified in sec. 9(p) (sec. 9(q)). The Secretaries of Agriculture and the Interior were vested with supervisory authority over the administration of certain phases of the Act.

Up to 1930, the City complied with all the conditions of the grant except that one road specified in sec. 9(p) of the Act was constructed in a manner not acceptable to the Secretary of the Interior, and construction of another was deferred at the request of the Secretary.

In December, 1930, the City submitted to the Secretary of the Interior a proposal to pay to the United States the sum of One Million Two Hundred Fifty Thousand Dollars, ($1,250,000), in five annual installments as well as to construct one additional road not specified in the Raker Act in consideration of being relieved of all further road-building obligations under the Act. The continuing obligation of the City for maintenance and upkeep of roads was expressly acknowledged. The proposal was approved by the Secretary of the Interior and by the City's Board of Supervisors. In the course of the next five years, the sum of One Million Two Hundred Fifty Thousand Dollars, ($1,250,000), was paid to the United States and the greater part expended by the Department of the Interior for improvements in Yosemite National Park.

In October, 1932, the City and the Secretary of the Interior executed a so-called "second supplemental agreement" designed to "clarify and simplify" the agreement of December, 1930. That agreement, without imposing any additional conditions on the City, provided in part that "the City of San Francisco will no longer maintain any roads or trails within the boundaries of Yosemite National Park".

During the fiscal years of 1929 to 1940, the United States expended the sum of Twenty-seven Thousand Three Hundred Thirteen Dollars and Eighty-two Cents, ($27,313.82), for maintenance and repair of the roads comprehended in the Raker

Act. Contending that the agreement which relieved the City from the obligation of reimbursing the United States for such maintenance was void as beyond the Secretary's authority to execute, the United States sues to recover its outlay.

█ The proposition need not be labored that power to release or otherwise dispose of the property of the United States is lodged in the Congress by Article IV, Section 3 of the Constitution. Nor can defendant seriously assert that subordinate officials of the United States have that power, unless it has been conferred upon them, expressly or impliedly, by Act of Congress.[1] And where a government official purports to bind the United States to an agreement which such official had no statutory authority to execute, his act is of course nugatory and void.[2]

█ Defendant, however, vigorously urges that the Secretary of the Interior had the authority to execute the agreement here challenged. Emphasis is placed on the fact that the Raker Act in only a single instance reserves to Congress the power of modifying payments due the United States for road building and maintenance. On the other hand, the Act names the Secretary of the Interior in forty-two instances and instructs him to administer and enforce the multiform provisions of the statute. Specifically, section 9(p) provides that "all trail and road building and maintenance by the said grantee in the Yosemite National Park * * * shall be done subject to the direction and approval of the Secretary of the Interior * * *."

The Raker Act does not support defendant's contention. Congress reserved to itself the right of modifying payments due to the United States in only one instance because that provision is the only one in the Act which expressly envisions the diminution of property or renunciation of claims of the United States. Discretionary functions assigned to the Secretary of the Interior were limited to the performance of administrative tasks.[3] Vested with supervisory authority over the road building and maintenance program, the Secretary was doubtless empowered to determine such matters as the location of roads and the need for and adequacy of repair; but he was nowhere authorized to give away property of the United States or to waive obligations which defendant had expressly assumed as conditions of the statutory grant. Congress' express retention of the right to increase or diminish payments due the United States is eloquent corroboration, if any is needed, of the legislative intent not to delegate to an executive official the power to relieve defendant of its obligations.

But defendant vigorously presses the point that even if the Secretary of the Interior had no authority to enter into the contract here in issue, the United States should now be estopped from disaffirming the agreement because of the representations made by the Secretary, the City's reliance thereon and the acceptance by the United States of the consideration paid and its diversion into the Treasury. The questions before the Court, therefore, are whether the facts presented merit the interference of equity and whether an estoppel can

1. Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 294, 61 S.Ct. 995, 85 L.Ed. 1361; Pacific Hardware & Steel Co. v. United States, 1914, 49 Ct.Cl. 327, 335; Bausch & Lomb Optical Co. v. United States, 1934, 78 Ct.Cl. 584, 607. See also 19 Dec.Comp.Gen. 48 (1935).

2. Sutton v. United States, 1921, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Osborne v. United States, 9 Cir., 1944, 145 F.2d 892; Lear v. United States, D. C.Alaska 1892, 50 F. 65.

3. Among the duties assigned to the Secretary are the following: to designate the particular land on which power stations and their accessories were to be built, to supervise the construction of dams and other facilities, to direct the removal of debris and inflammable material from defendant's right-of-way, to determine the method of cost accounting to be employed by defendant, to approve or disapprove construction of additional roads and trails which defendant deemed expedient for the utilization of the land granted, to evaluate defendant's diligence in prosecuting its building program and to certify to the Attorney General for possible legal action any dereliction of defendant.

be raised against the Federal Government under the circumstances here obtaining.

■ One of the conditions precedent to the successful invocation of the Court's equitable powers is reasonable reliance on a representation of the party sought to be estopped.[4] Whether defendant acted reasonably in relying on the Secretary's arrogation of Congressional prerogatives is highly doubtful. Defendant is not an underprivileged individual but a redoubtable municipal corporation being advised by counsel aware of the limitations on the powers of executive officials.

But even if defendant's equities were such as to prevail against a private petitioner, they might not suffice to estop the United States. As a general proposition, estoppel of the public is not favored,[5] and will be raised if at all, only where the government asserts an ordinary proprietary claim[6] and not where it invokes the aid of the Court in its sovereign capacity.[7]

Defendant here cites a number of state decisions to the effect that the government acts in its "proprietary" capacity when it disposes of public land.[8] On the other hand, this Court has held that the establishment of national parks is a "governmental" function of the United States.[9]

Without placing too much reliance on the somewhat nebulous and perhaps attenuated distinction between "proprietary" and "sovereign" capacities, it is clear to the Court that the matter here in controversy lies in that general area of governmental activities in which by tradition and sound public policy an estoppel does not lie against the federal government.[10] Congress in passing the Raker Act, did not, as defendant asserts, merely dispose of surplus public lands; rather, it intended to make available to Northern California a source of cheap public power and, in consideration, to exact from the grantee funds to be used for improving and maintaining the national parks which the federal government holds for the benefit of the people under the general welfare clause of the Constitution.[11]

Nor is the Supreme Court of the United States in disagreement with this position.

4. Commissioner of Internal Revenue v. Bryson, 9 Cir., 1935, 79 F.2d 397; Traitel Marble Co. v. Hungerford Brass & Copper Co., D.C.1929, 34 F.2d 670.

5. Sanitary District of Chicago v. United States, 1925, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352; The Falcon, D.C.Md.1927, 19 F.2d 1009; Barnett Inv. Co. v. Nee, D.C.W.D.Mo.1947, 72 F.Supp. 81.

6. Branch Banking & Trust Co. v. U. S., 1951, 98 F.Supp. 757, 120 Ct.Cl. 72 (approval of contracts by unauthorized agent of U. S.); Playa de Flor Land & Improvement Co. v. U. S., D.C.Canal Zone 1945, 70 F.Supp. 281, modified on other grounds, 5 Cir., 1947, 160 F.2d 131 (agreement by predecessor; United States successor to title); Dayton Airplane Co. v. U. S., 6 Cir., 1927, 21 F.2d 673 (approval of contracts by authorized agent of U. S.); U. S. v. Denver & R. G. W. R. R., 8 Cir., 1926, 16 F.2d 374 (forfeiture of grant of public land).

7. Utah Power & Light Co. v. U. S., 1917, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; U. S. v. City and County of San Francisco, 1940, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; U. S. v. Warmsprings Irrigation District, 38 F.Supp. 239 (D.C.Or.1940).

8. Strand v. State, 1943, 16 Wash.2d 107, 132 P.2d 1011; State v. Horr, 1925, 165 Minn. 1, 205 N.W. 444.

9. Yosemite Park & Curry Co. v. Collins, D.C.N.D.Cal.1937, 20 F.Supp. 1009.

10. Nor is the United States' acceptance of benefits significant if the conditions giving rise to an estoppel are not otherwise present. United States v. Standard Oil Co. of California, D.C.S.D.Cal. 1937, 20 F.Supp. 427.

11. The Court is not unaware of the fact that Senators Pittman and Borah were of the opinion that by the Raker Act the United States, like any other proprietor, merely disposed of its lands. 50 Cong. Record, Part 6, p. 5461. That interpretation, however, is inconsistent with the clearly expressed statutory purpose to improve and provide funds for the maintenance of national parks located in California. Raker Act, secs. 7, 9(p), 9(q). See also the discussion, infra, of United States v. City and County of San Francisco, note 7, supra. The Supreme Court in that case extensively quoted from the legislative history of the Raker Act.

That Court considered the Raker Act in United States v. City and County of San Francisco.[12] In violation of an express provision of the Act, the City sold power to a private utility company for resale. Faced with a suit by the United States to enjoin that practice, the City attempted to raise an estoppel on the ground that the Secretary of the Interior had authorized such resale. The Supreme Court, however, insisted that " * * * We cannot accept the contention that administrative rulings—such as those here relied on—can thwart the plain purpose of a valid law. As to estoppel, it is enough to repeat that ' * * * the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit ' ".[13] That quotation disposes of this case.

Judgment will be entered in favor of plaintiff and against defendant in the sum of Twenty-seven Thousand Three Hundred Thirteen Dollars and Eighty-two cents, ($27,313.82), together with costs.

---

12. See note 7, supra.

13. 310 U.S. 16 at pages 31, 32, 60 S.Ct. 749, at page 757.