868 F.2d 1277
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MIDWEST FOUNDATION, INDEPENDENT PHYSICIANS ASSOCIATION,
d/b/a Choicecare, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 88-1297.
 United States Court of Appeals, Federal Circuit.
 Feb. 6, 1989.
 
 Before RICH, PAULINE NEWMAN and MAYER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 The judgment of the United States Claims Court, No. 618-86C, dismissing the complaint is affirmed.
 
 OPINION
 
 2
 As we see it, Choicecare's theory is that pursuant to the June 7, 1985, letter from the Health Care Financing Administration (HCFA), it was entitled to terminate performance of its Health Maintenance Organization (HMO) risk-sharing contract on September 1 that year, and the government's repudiation of the June 7th letter on June 12, 1985, was a breach of the termination agreement. One question is dispositive: Is the government bound by the June 7th letter? The indisputable answer is no.
 
 
 3
 Contracts executed by government agents acting beyond the scope of their authority bind neither the government nor the party with whom the agent has contracted. Sutton v. United States, 256 U.S. 575, 579 (1921) (government not bound by contract that Secretary of War was not authorized to make); New England Tank Industries of New Hampshire, Inc. v. United States, 861 F.2d 685, 695 (Fed.Cir.1988) (contractor not bound by contract if government agent acted in disregard of a regulation in exercising a renewal option). Apparently recognizing this proposition, Choicecare tries to show that Arney in fact had the requisite, actual authority when he affixed Stec's name to the June 7th letter. We are not persuaded.
 
 
 4
 The first argument is that Arney was vested with formal delegated authority to act on HMO matters by virtue of a detail to the position of "Acting Associate Regional Administrator." Assuming such a detail could lawfully have been made, Choicecare presented no evidence that Arney had been so detailed. Likewise, while Arney had been the "officer-in-charge" (and was thereby vested with whatever authority that appellation carried), his stint expired on May 31, 1985, a week before the execution of the June 7th letter. On this issue, therefore, there is no genuine factual dispute, and summary judgment in favor of the government was in order. Sweats Fashions v. Pannill Knitting Co., 833 F.2d 1560, 1562, 4 USPQ2d 1793, 1795 (Fed.Cir.1987).
 
 
 5
 Choicecare next says that even if Arney lacked formally delegated authority to agree to contract termination, he nevertheless had actual authority "by virtue of HCFA's custom of permitting its employees to take actions on HMO contracts...." This proposition is wholly untenable as a matter of law.
 
 
 6
 It is axiomatic that agencies must follow their own regulations. Morton v. Ruiz, 415 U.S. 199, 235 (1974). Even assuming, as Choicecare charges, that disregard of authority-limiting regulations was prevalent in the HCFA, Arney's transgression does not give Choicecare a contract claim. "Wrongs" of the sort alleged simply do not create a "right" against the government. To the contrary,
 
 
 7
 anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.
 
 
 8
 Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384 (1947). See also, Heckler v. Community Health Services, 467 U.S. 51, 63 (1984) ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law"); Sutton, 256 U.S. at 579 ("Those dealing with [a government agent] must be held to have had notice of the limitations upon his authority").
 
 
 9
 Here, Stec's authority to make, modify and terminate HMO contracts was nondelegable. That ends the matter. Regardless of what Arney or anyone else at HCFA may have thought, Arney could not bind the government to an agreement terminating Choicecare's risk-sharing contract.
 
 
 10
 We are not unmindful of the added difficulty posed by Arney's failure to indicate that he was signing Stec's name. "But not even the temptations of a hard case can elude the clear meaning of the regulation" defining Stec's, and in turn Arney's, authority. Merrill, 332 U.S. at 386. Of course, Choicecare did not act on the June 7th letter, but on its assumption that the government would agree to termination: The day before the letter was written, and days before it was received, Choicecare had notified its enrollees that it was discontinuing its Medicare program. It therefore prudently has abandoned its estoppel argument.
 
 
 11
 Choicecare's other arguments are equally unpersuasive. The Claims Court properly granted the government's motion for summary judgment. We also see no abuse of the court's discretion in granting the government's motion for a protective order that prevented the depositions of two senior HCFA officials.
 
 
 12
 PAULINE NEWMAN, Circuit Judge, concurring.
 
 
 13
 I reach the same result as does the court, but I deem the court's statement too sweeping in its implication that a government agency can not be held to its contractual undertakings when questions of authority arise. Lynch v. United States, 292 U.S. 571, 579, 580 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.... Punctilious fulfillment of contractual obligations is essential to the maintenance of the credit of the public as well as private debtors"); Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1564 (Fed.Cir.1987) ("The government enters into contracts as does the private person, and its contracts are governed by the common law"); Specialty Assembling & Packing Co. v. United States, 355 F.2d 554 (Ct.Cl.1966) ("As a party to a contract, the Government has rights and obligations similar to those of a private person under similar circumstances").
 
 
 14
 The United States government, as other entities, acts through representatives. When such persons act on matters in which they have apparent authority, and when there is no hint that such action is ultra vires, it is not automatic that the government is excused when they do not in fact have adequate authority. Brant v. Hickel, 427 F.2d 53, 57 (9th Cir.1970), quoted in Heckler v. Community Health Servs. of Crawford County, Inc., 467 U.S. 51, 61 n. 13 (1984) ("To say to these appellants, 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government.")
 
 
 15
 Thus, although the government may on occasion avoid the consequences of its acts by disclaiming the authority of the actor, this is less a universal rule than the court's presentation suggests. The jurisprudence shows that the result is dependent on the circumstances of the case, including the relation between the parties, the nature of the unauthorized representation, the apparent authority of the government representative, and the extent of reliance thereon. Applying these considerations I join the court's judgment, for the government's repudiation of its June 7 letter, five days later, was not an untimely correction of the unauthorized act of its representatives.