**UNION PACIFIC RAILROAD CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–490C.**

United States Court of Federal Claims.

June 28, 2002.

Tim D. Wackerbarth, Seattle, WA, for plaintiff.

John N. Maher, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Richard J. Moen, U.S. General Services Administration, Washington, DC, of counsel.

## ORDER

MILLER, Judge.

This contract case is before the court on defendant's motion to dismiss under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. At issue is whether the Anti–Deficiency Act, 31 U.S.C. § 1341 (2000), precludes a claim predicated on the Government's refusal to honor an indemnity clause. Argument is deemed unnecessary.

## FACTS

The facts, viewed favorably to the pleader, are drawn from the complaint. Union Pacific Railroad Corporation ("plaintiff") is a Dela-ware corporation operating as a common carrier by railroad. Until approximately 1970 the United States General Services Administration ("GSA") owned property known as the Auburn General Depot in Auburn, Washington (the "Depot"). At that time GSA sold portions of the Depot, but retained ownership of certain lead tracks.

On January 28, 1970, GSA entered into a Lead Track Agreement (the "LTA") by which GSA granted plaintiff and three other railroad companies an easement over the lead tracks for switching purposes. The LTA recited GSA's ownership of the lead tracks and responsibility for their maintenance. Under the LTA's section 3, GSA agreed to keep the tracks clear and to indemnify plaintiff to the extent permitted by the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) (2000) (the "FTCA"), for any violations of this duty. GSA also agreed to a general indemnification provision, codified in section 9 of the LTA ("Section 9"). Section 9 provides: "The GSA will indemnify the Railroads to the extent permitted by the Federal Tort Claims Act, against claims of third persons arising from the negligence or misconduct of employees of the United States of America." The LTA was signed by representatives of the four railroads and by W.C. Brooks, Contracting Officer, Buildings Management Division, GSA.

On or about September 27, 1998, one of plaintiff's employees was injured when a gap in a lead track at the Depot caused a derailment. The employee sued both plaintiff and GSA in the United States District Court for the Western District of Washington. Plaintiff cross-claimed against GSA for contractual indemnification. On May 5, 2001, the district court dismissed the cross-claim after the parties agreed that jurisdiction for contractual indemnity lay with the United States Court of Federal Claims. On May 18, 2001, plaintiff settled with its employee for $101,830.00. GSA has refused to indemnify plaintiff.

Plaintiff now sues for breach of contract, seeking to recover the $101,830.00 settlement, prejudgment interest, attorneys' fees, and costs. Defendant moves to dismiss under RCFC 12(b)(4), presenting several argu-

ments to the effect that Section 9 of the LTA is unenforceable because it contravenes the Anti–Deficiency Act, 31 U.S.C. § 1341 (2000).

## DISCUSSION

When a federal court reviews the sufficiency of the complaint, it follows "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed. Cir.1997). Under RCFC 12(b)(4), the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must indulge all reasonable inferences in favor of the non-movant, *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Therefore, a motion under RCFC 12(b)(4) must be denied if relief can be granted "under any set of facts that could be proved consistent with the allegations." *NOW v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

Defendant finds plaintiff's complaint lacking under each of five arguments: (1) The Anti–Deficiency Act, 31 U.S.C. § 1341(a)(1), bars a contracting officer from agreeing to open-ended indemnification provisions; (2) the courts will not enforce indemnification provisions that contravene the Anti–Deficiency Act's plain language; (3) plaintiff has not identified a prior appropriation earmarked to cover the costs of indemnification, as required by the Anti–Deficiency Act; (4) a general ban exists against enforcement of open-ended indemnity clauses; and (5) plaintiff does not invoke an exception to the Anti–Deficiency Act, so that the contracting officer in this case did not lawfully bind the United States to an open-ended indemnification.

■ Although addressed as individual arguments, defendant's motion to dismiss is grounded on the proposition that Section 9 is an open-ended and unenforceable indemnification clause that, by operation of the Anti–Deficiency Act, cannot form the basis of a legally cognizable claim against the United States. Pursuant to the Anti–Deficiency Act, 31 U.S.C. § 1341(a)(1):

> An officer or employee of the United States Government or the District of Columbia government may not—
>
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; [or]
>
> (B) involve either government in a contract or obligation for the payment of money before an appropriation .is made unless authorized by law . . . .

The statute prevents the executive branch from binding the Government to expenditures or liabilities beyond those contemplated and authorized by the legislative branch. *See Sutton v. United States,* 256 U.S. 575, 578–80, 56 Ct.Cl. 477, 41 S.Ct. 563, 65 L.Ed. 1099 (1921) (discussing predecessor statute); *Public Works—Contracts,* 21 Op. Atty, Gen. 244, 248 (1895) (same). The Anti–Deficiency Act thus "bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." *Hercules, Inc. v. United States,* 516 U.S. 417, 427, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996).

■ The cases cited by defendant instruct that the Anti–Deficiency Act proves an effective bar to causes of action predicated on the establishment of an implied-in-fact contract for indemnification. *See Hercules,* 516 U.S. at 427–28, 116 S.Ct. 981 (Anti–Deficiency Act is strong evidence that contracting officer would not agree to alleged indemnification); *California–Pacific Util. Co. v. United States,* 194 Ct.Cl. 703, 716, 1971 WL 17822 (1971) (contracting officer's statements of indemnification not binding when indemnification not included in permit agreement or envisioned in appropriation); *Jarvis v. United States,* 45 Fed.Cl. 19, 20 (1999) (because of Anti–Deficiency Act, reading implied-in-fact indemnification clauses into agreements highly disfavored); *Wm. T. Thompson Co. v. United States,* 26 Cl.Ct. 17, 29 (1992) (assuming existence of implied-in-fact contract, Anti–Deficiency Act precluded contracting officer from binding Government to indemnification term).

Defendant, however, does not challenge the legality of the LTA nor Mr. Brooks's authority to enter contracts for GSA. Nor does defendant explain why plaintiff's cause of action must be construed as based solely upon the indemnification clause set out in Section 9. As explained in *Johns–Manville Corp. v. United States,* 12 Cl.Ct. 1, 19 (1987), *vacated on other grounds,* 855 F.2d 1571 (Fed.Cir.1988), the issue of the creation of an implied-in-fact contract legally is distinguishable from the issue of a claim based on breach of an express contract:

> The confusion between claims based on contract formation and breach is important. The former are subject to the Anti–Deficiency Act, which prevents the enforcement of contracts that obligate the payment of funds beyond appropriations; the latter are not, because they are based on contracts themselves that do not violate the Anti–Deficiency Act.

In other words, "neither the Appropriations Clause of the Constitution, nor the Anti-deficiency Act, shield the government from liability where the government has lawfully entered into a contract with another party." *Wetsel–Oviatt Lumber Co. v. United States,* 38 Fed.Cl. 563, 570 (1997) (citing cases).

In this case GSA's rights and duties under the LTA are not confined to Section 9, but include an affirmative duty to maintain certain lead tracks used by plaintiff for switching purposes. Under the cases discussed above, the Anti–Deficiency Act likely would preclude a claim that this duty included an implied agreement for indemnification. Nevertheless, if plaintiff can establish that the settlement paid to its employee was the direct and foreseeable consequence of GSA's breach of some other contractual duty, plaintiff may seek recovery independent of GSA's obligations under Section 9. *See Terteling v. United States,* 167 Ct.Cl. 331, 340–41, 334 F.2d 250, 255–56 (1964); *Pratt v. United States,* 50 Fed.Cl. 469, 477–78 (2001). An award under this approach would not offend the Anti–Deficiency Act, because 31 U.S.C. § 1304(a) (2000), provides for a central, government-wide judgment fund from which judicial tribunals may order payments independent of the amount of funds existing at the agency level to satisfy judgments. *See Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1583 (Fed.Cir.1994) (by operation of this provision, "courts and boards, in rendering judgment, are not required to investigate whether program funds are available"); *Lopez v. A.C. & S., Inc.,* 858 F.2d 712, 716 (Fed.Cir.1988).

Moreover, to the extent that plaintiff's claim properly is based solely on Section 9 of the LTA, defendant has not proved that, as a matter of law, the indemnification obligations contained therein were unsupported by an appropriation. The record shows that Congress appropriated money to GSA at the inception of the LTA in 1970 and at the time of this claim in 2001 "[f]or necessary expenses" of real property management.[1] Defendant cites no authority for the proposition that, because no appropriation specifically earmarked funds to cover potential costs of indemnification incurred under the LTA, the clause violates the Anti–Deficiency Act. Instead, it relies on the Supreme Court's statement that "[o]rdinarily no federal appropriation covers contractors' payments to third-party tort claimants." *Hercules,* 516 U.S. at 427, 116 S.Ct. 981. Plaintiff, however, is not a contractor attempting to prove an implied-in-fact agreement for indemnification, as was the situation in *Hercules.* Rather, plaintiff is suing on the basis of an easement agreement, and the question devolves to whether an appropriation earmarked for the "necessary expenses" of "property management" includes contractual liabilities under the LTA. The court cannot say as a matter of law that such a provision could not be construed to satisfy payment of GSA's contractual obligations under the LTA.

Notwithstanding the appropriation, GSA's obligations under Section 9 appear so open-

---

1. Pub.L. No. 91–126, 83 Stat. 221, 224 (1969), allocated $307,000,000.00 to GSA "[f]or necessary expenses, not otherwise provided for, of real property management and related activities as provided by law." Pub.L. No. 106–554, 114 Stat. 2763A–141 (2000), appropriated $464,154,000.00 to GSA for the "necessary expenses of real property management and related activities not otherwise provided for, including operation, maintenance and protection of federally-owned and leased buildings."

ended as to contravene the Anti–Deficiency Act. By its terms Section 9 is limited in that GSA's obligations extend only to its statutory liability under the FTCA and only to claims predicated on failure to maintain lead tracks at the Depot when those lead tracks are used for switching purposes by plaintiff. According to defendant, Section 9 is open-ended because the Government's liability under the FTCA is itself open-ended.[2] Defendant, however, cites no authority for this proposition.

Although FTCA liability is arguably broad, the issue for Anti–Deficiency Act purposes is not whether GSA's liability under the LTA is broad, but whether that liability is supported by an appropriation. While no court apparently has endeavored to develop a legal definition of an "open-ended" obligation, those few cases discussing the nature of an open-ended obligation within the context of the Anti–Deficiency Act have analyzed whether the obligation is quantifiable such that it is possible to ascertain whether existing appropriations could cover the liability. *See Hercules*, 516 U.S. at 437–38, 116 S.Ct. 981 (Breyer, J., dissenting) (distinguishing "capped" from "open-ended" indemnification); *Nat'l RR Passenger Corp. v. United States*, 3 Cl.Ct. 516, 521 (1983) (clause providing for complete indemnification of railroad for losses within insurance deductible limits not open-ended); *In re U.S. Park Police Indemnification Agr.*, No. B–242146, 1991 WL 200162, *1, 1991 U.S. Comp. Gen. LEXIS 1070, at **3, 5 (Aug. 16, 1991) (clause providing indemnity for "property damage" and "personal injury" suffered by officers outside their jurisdiction open-ended); *Metzenbaum*, 63 Comp. Gen. 145, 148 (1984) (Navy's contractual right to terminate contract set ceiling on Government's contingent liability under indemnity provision such that indemnity provision was not open-ended); *Assumption by Government of Contractor Liability to Third Persons—Reconsideration*, 83–1 Comp. Gen. Proc. Dec. ¶ 501, at 7 ("[W]e have never objected to an indemnity where the maximum amount of liability is

fixed or readily ascertainable."). Section 9 does not meet this test because it is impossible to predict the dollar amount of tort claims to which GSA would be subject.

A relic from early-twentieth-century jurisprudence introduces sound legal reasoning to this quandary. In 1909 the Secretary of Commerce and Labor sought to enter a contract with a railroad company by which the Government would be granted the right to operate so-called velocipede cars over the railroad's property. *Contract for Payment of Damages to Private Property*, 15 Dec. Comp. Treas. 405, 406 (1909). The contract was to include a provision to indemnify the railroad for property damage caused by the velocipede cars. *Id.* Discussing the Anti–Deficiency Act's predecessor statute, the Comptroller of the Treasury determined that "[t]he damages that might result from the use of the velocipede cars are necessarily of an uncertain and indefinite nature and such as might cause the appropriation to be exceeded. . . . You are therefore advised that you would not be authorized to make the contract indicated." *Id.* at 407. The only difference in respect of the LTA is that it is the railroad that is using the Government's property. This is a difference without legal significance, and defendant's motion to dismiss therefore must be granted on the ground that Section 9 is an open-ended, and thus unenforceable, indemnity provision.

In anticipation of this result, plaintiff has moved to amend its complaint to include a count for reformation of Section 9 in order to remove any ambiguity that it violates the Anti–Deficiency Act. *See Hopi Tribe v. United States*, 20 Cl.Ct. 782, 784–85 & n. 2 (1990) (option to amend as a matter of right under RCFC 15(a) terminated when court grants motion to dismiss). Specifically, plaintiff seeks to reform the contract language by specifying (1) that in no event will the government payments under the clause exceed actual appropriations and (2) that nothing in the contract shall be construed as a promise

---

**2.** The FTCA renders the Government amenable to suit for acts caused by the negligence or wrongful act of an employee acting within the scope of employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

that Congress, at a later date, will appropriate sufficient funds to meet deficiencies.

Contract reformation is a remedy that may be sought in the Court of Federal Claims when a plaintiff also pursues money damages. *E.g., Gould, Inc. v. United States,* 67 F.3d 925, 927 (Fed.Cir.1995). Reformation of a contract is appropriate if the plaintiff can show the contract terms reflect a mutual mistake of material fact, resulting in a contract which does not faithfully embody the parties' actual intent. *Roseburg Lumber Co. v. Madigan,* 978 F.2d 660, 665 (Fed.Cir. 1992); *Northrop Grumman Corp. v. United States,* 47 Fed.Cl. 20, 41–42 (2000) (reformation is narrow remedy designed to reflect true agreement of parties, not mechanism for court to redesign best agreement under the circumstances). Reformation could bring Section 9 within the realm of Mr. Brooks's authority, at least to the extent that GSA's liability is determined to be supported by an appropriation. *See California–Pac.,* 194 Ct. Cl. at 716; *Johns–Manville,* 12 Cl.Ct. at 25 (noting possible different result if contractor, whose claim barred by Anti–Deficiency Act, alleged that both parties had understood that potential liability under indemnification clause was limited to portion of existing appropriations); *cf. Blackhawk Heating & Plumbing Co. v. United States,* 224 Ct.Cl. 111, 117–19, 622 F.2d 539, 542–43 (1980) (discussing negotiations over propriety of provision making Government's liability contingent upon availability of appropriated funds); *U.S. Park Police,* 1991 WL 200162, at \*2, 1991 U.S. Comp. Gen. LEXIS 1070, at \*\*7–8 (law enforcement agencies may enter temporary indemnification agreements provided that they limit liability to appropriations available at time loss arises and do not obligate Congress to future appropriations).

The court expresses no opinion on whether plaintiff's proposed language would succeed to bring Section 9 within the realm of a definite obligation, but merely grants plaintiff leave to seek reformation. If plaintiff has a reasonable basis in fact and legal argument for suing for breach independent of the operation of Section 9 and independent of an implied-in-fact promise of indemnification, it is encouraged also to amend its complaint accordingly.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss plaintiff's claims is granted insofar as its claims are ones for indemnification barred by the Anti–Deficiency Act.

2. Plaintiff is granted leave to file an amended complaint by July 30, 2002.