For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

## COSTS

Each party shall bear its costs.

*AFFIRMED*

**MOTOROLA, INC., Appellant,**

v.

**Togo D. WEST, Secretary of the Army, Appellee.**

**No. 97–1098.**

United States Court of Appeals, Federal Circuit.

Sept. 18, 1997.

Rehearing Denied Oct. 16, 1997.

ment of Justice, Washington, DC, argued for appellee. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleeker, Assistant Director. Of counsel was Captain Philip McCaffrey, Department of the Army, Arlington, VA.

Before MAYER, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

Aydin Corporation, proceeding through Motorola, Inc., the prime contractor, appeals a decision of the Armed Services Board of Contract Appeals (Board) partially denying Aydin Corporation's appeal from a contracting officer's final decision. Because no statute of limitations bars the Government's claim and Aydin Corporation did not meet its submission requirements under the Truth in Negotiations Act (TINA), this court affirms.

**I.**

Aydin Corporation brings this appeal in the name and with the authorization of Motorola, Inc. (Motorola), the prime contractor. On August 10, 1984, Motorola entered a contract with U.S. Army Communications and Electronics Command (CECOM). CECOM sought to modify the contract to add raster display subsystems from Aydin Computer Systems Division (Aydin), a division of Aydin Corporation.

On November 8, 1985, Aydin submitted a proposal to its competitor, Motorola. In the proposal, Aydin claimed that its "indirect and Burden Rates [were proprietary] in nature and [were] available for Audit through [the Defense Contract Audit Agency]." In other words, Aydin refused to share its cost data with Motorola. This undisclosed data included within its General and Administrative (G & A) expenses a "facilities capital charge"—a charge from Aydin Corporation to Aydin for an imputed cost of doing business.

In March 1986, Albert Shackerman of the Defense Contract Audit Agency (DCAA) audited Aydin's proposal. DCAA issued a report dated March 17, 1986, recommending acceptance of Aydin's proposed G & A rate of

Peter B. Jones, Jones & Donovan, Irvine, CA, argued, for appellant.

Harold D. Lester, Jr., Attorney, Commercial Litigation Branch, Civil Division, Depart-

45%. Mr. Shackerman did not discover the facilities capital charge during that audit.

Aydin Corporation issued two corporate memoranda dated September 30, 1986, and August 21, 1987, directing all of its divisions to exclude the facilities capital charge from the G & A rate on its other Government contracts. Aydin's president, Mr. Lohr, described the facilities capital charge as being like an imputed interest charge which "you could almost look at as a penalty."

Beginning in December 1986, Motorola made several requests for a DCAA audit of Aydin's proposal. A CECOM contract specialist later mistakenly requested cancellation of Motorola's audit requests. During the week of February 27, 1987, CECOM provided Motorola with Aydin's G & A rate, reported as 45%, based on telephonic verification with DCAA. Using that G & A rate, Motorola and Aydin negotiated a subcontract during March and April 1987, culminating in a firm, fixed price of $5,222,863. The Board later found that the amount of the subcontract would have been different if Motorola had known of the facilities capital charge. On April 9, 1987, Aydin's president, Mr. Lohr, executed a Certificate of Current Cost or Pricing Data for costs to and including April 3, 1987.

During an April 1988 audit of Aydin Corporation, Aydin Corporation provided DCAA with its September 30, 1986, and August 21, 1987, corporate memoranda. Aydin's financial statements, statements of operations, and general ledger offer no explanation for the facilities capital charge. Without some explanation, an auditor could not determine how the facilities capital charge was derived.

On September 30, 1991, DCAA issued an audit report recommending a price reduction of $933,787 based on a 24%, rather than a 45%, G & A rate. With September 24, 1986, as its baseline, that report disallowed Aydin's facilities capital charge. After a change in the baseline to April 3, 1987 (the effective date of the certification of Mr. Lohr), the contracting officer issued a final decision dated August 5, 1993, reducing the price by $784,219. Later, on April 10, 1995, the contracting officer amended the final decision. On June 19, 1995, Aydin appealed the April 10, 1995, final decision to the Board. The Board concluded that Aydin's submission included an unallowable facilities capital charge, that the charge was not disclosed, and that the Government detrimentally relied upon the submission.

## II.

### Standard of Review

■ 41 U.S.C. § 609(b) (1988) governs the scope of review for appeals under the Contract Disputes Act (CDA):

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

*See Madigan v. Hobin Lumber Co.*, 986 F.2d 1401, 1403 (Fed.Cir.1993). Although contract interpretation is a question of law, the Board's contract interpretation receives "careful consideration" from this court. *Interstate Gen. Gov't Contractors, Inc. v. Stone*, 980 F.2d 1433, 1434 (Fed.Cir.1992).

### Statute of Limitations

Aydin contends that one of two statutes of limitations bars the Government's claim, either: (1) the six-year statute of limitations in 28 U.S.C. § 2415(a), or (2) the six-year statute of limitations added to CDA through the Federal Acquisition Streamlining Act of 1994 (FASA). The parties agree that the Government's claim accrued on April 3, 1987. Although the parties disagree about which decision qualifies as the Government's operative final decision, neither party disputes that the final decision came more than six years after April 3, 1987. Therefore, if this court applies either statute of limitations, the Government's claim is time-barred.

■ This court has determined that section 2415(a) does not apply to Government claims that cannot be asserted in federal court before issuance of a contracting officer's final decision. By its terms, section 2415(a) applies only to an "action for money damages brought by the United States." 28

U.S.C. § 2415(a) (1994). These terms do not cover a CDA claim, which necessarily arises only after issuance of an administrative decision:

> [T]he challenged [CDA] action is not an "action for money damages brought by the United States," as expressly required by the statute. Instead it is an administrative appeal by a contractor from a contracting officer's decision that the contractor owes the Government the amount of certain disallowed costs. Therefore, we hold that 28 U.S.C. § 2415 is inapplicable on its face.

*S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 5 (Fed.Cir.1985). Since section 2415 does not apply to Government claims under the CDA, we reject Motorola's argument that FASA was intended to clarify existing law, *e.g.* section 2415. Because the contract falls under the terms of the CDA, the six-year limit in section 2415(a) does not bar the Government's claim.

■ The six-year statute of limitations in FASA presents a more complicated issue. The Government argues that the FASA statute of limitations does not apply retroactively to bar claims on contracts awarded before FASA's enactment. Aydin, on the other hand, argues that the FASA statute of limitations applies retroactively. In 1994, FASA amended the CDA:

> (a) PERIOD FOR FILING CLAIMS.— Section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605) is amended in subsection (a) by inserting after the second sentence the following: 'Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim....'

Pub.L. No. 103–355, § 2351, 108 Stat. 3243, 3322. FASA expressly enumerated several provisions of the CDA that would have "immediate applicability" on the date of enactment. *Id.,* § 10001(c), 108 Stat. at 3404. Section 10001(c) did not identify section 2351 (the six-year statute of limitations) among the provisions with "immediate applicability." Therefore, FASA required implementation of its statute of limitations "in the manner prescribed in the final regulations [to be] promulgated pursuant to section 10002" of FASA. *Id.,* § 10001(b)(2), 108 Stat. at 3404.

In September 1995, the Office of Federal Procurement Policy (OFPP) issued a Federal Acquisition Regulation (FAR) governing the effective date of the six-year bar:

> The contracting officer shall issue a written decision on any Government claim initiated against a contractor within 6 years after accrual of the claim, unless the contracting parties agreed to a shorter time period. The 6–year period shall not apply to contracts awarded prior to October 1, 1995....

FAR 33.206(b), 48 C.F.R. § 33.206(b) (1996). This regulation denied retroactive application of the FASA statute of limitations to contracts awarded before October 1, 1995.

The regulation, FAR 33.206(b), does not conflict with paragraph (2) of section 2351 of FASA, which states:

> (2) Notwithstanding the third sentence of section 6(a) of the Contracts Disputes Act of 1978, as added by paragraph (1), if a contract in existence on the date of the enactment of this Act requires that a claim referred to in that sentence be submitted earlier than 6 years after the accrual of the claim, then the claim shall be submitted within the period required by the contract.

Pub.L. No. 103–355, § 2351(2), 108 Stat. 3243, 3322 (1994). According to paragraph (2), subsection (a)—the six-year limit—cannot extend a shorter statute of limitations in a contract in existence on FASA's date of enactment. Arguably, paragraph (2) suggests by implication that FASA's six-year statute of limitations extends to contracts in existence on the CDA's enactment date. However, any perceived inconsistency between the regulation and FASA, section 2351, paragraph 2, is clarified by FASA's deferral of the manner of implementation of its six-year statute of limitations to subsequent regulations.

Under FASA's framework, OFPP conceivably could have promulgated a regulation applying the six-year limit to contracts already in existence, i.e., retroactively. Section 2351, paragraph (2), operates to place a restriction on OFPP's retroactive application of the six-year bar by OFPP: the statute of limitations for existing contracts can not be enlarged. This section does not require

OFPP to apply the statute of limitations to any existing contracts; it merely restricts OFPP's ability to apply it to a subset of contracts that were already governed by a shorter contractual time bar.

FASA, section 2351, paragraph (2), does not mandate a retroactive application of the six-year bar, but merely ensures that OFPP's implementation of the bar will not disturb contracts with a shorter limit. Ultimately, OFPP decided to apply the six-year bar prospectively only, thus avoiding any conflict with existing contracts irrespective of their statutes of limitations.

Therefore, OFPP's FAR 33.206(b) is fully consistent with FASA's section 2351, paragraph (2). OFPP's implementing regulation made the FASA statute of limitations applicable to contracts prospectively. FASA's time bar does not apply to this Government claim.

Accordingly, this court affirms the Board's refusal to apply a six-year statute of limitations to bar the Government's claim. Having so decided, this court need not consider the Government's alternative arguments that even a retroactive application of FASA's statute of limitations would not bar the Government's claim.

### *Truth in Negotiations Act (TINA)*

■ TINA, 10 U.S.C. § 2306(a), permits the Government to reduce a contract price when it is later found that a specific cost item was overstated. *See Cutler–Hammer, Inc. v. United States,* 189 Ct.Cl. 76, 416 F.2d 1306, 1309 (1969). TINA provides disclosure requirements for contractors dealing with the Government. The Board determined that Aydin did not meet the disclosure requirements of TINA.

■ Under TINA, a subcontractor normally submits cost data to its general contractor during negotiations on the subcontract. As a competitor of Motorola, Aydin, however, did not submit cost data during these negotiations. Aydin instead submitted its cost data to the DCAA. Motorola then requested that the Government audit Aydin's cost rate data. Aydin argues that this request satisfied Motorola's obligation to submit Aydin's cost data.

To the contrary, FAR 15.804–1(a), 48 C.F.R. § 15.804–1(a) (1987), requires that "cost or pricing data may be submitted actually or by specific identification in writing." Moreover FAR 15.804–6(d), 48 C.F.R. § 15.804–6(d), emphasizes:

> However, there is a clear distinction between submitting cost or pricing data and merely making available books, records, and other documents without identification. The latter does not constitute "submission" of cost or pricing data.

Aydin's submission did not directly supply documentation, but rather stated that a DCAA audit would support its indirect costs. Therefore, Aydin did not meet the FAR submission requirement.

In other words, before relying on requests for a DCAA audit in the hopes that these examinations might have discovered the "facilities capital cost," Aydin and Motorola must have first properly submitted the cost data. The mere deposit of books and records does not meet the requirement of identifying cost information for reasonable access by the contracting officer. *See Lockheed Aircraft Corp. v. United States,* 193 Ct.Cl. 86, 432 F.2d 801, 805 (1970) (making files available, without physical delivery, did not "make the other parties aware of the existence of this significant information"). Regardless of whether Aydin should have submitted the data to the Government or to Motorola, the fact remains that Aydin submitted it to neither. Accordingly, this court affirms the Board's conclusion that this purported submission of its cost data was insufficient under TINA.

Because the Government's claim is not barred by a statute of limitations and Motorola did not satisfy its submission requirements under TINA, this court *affirms*.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*