# United States Court of Appeals for the Federal Circuit

04-1286

GREENWOOD ASSOCIATES, L.P.,

Appellant,

v.

Stephen A. Perry,
ADMINISTRATOR, GENERAL SERVICES ADMINISTRATION,

Appellee.

Richard D. Grossman, Law Offices of Richard D. Grossman, of Chicago, Illinois, argued for appellant.

Kelly B. Blank, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director. Of counsel on the brief was Amanda Wood, Assistant General Counsel, Office of the General Counsel, General Services Administration, of Washington, DC.

Appealed from: General Services Administration Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

04-1286

GREENWOOD ASSOCIATES, L.P.,

Appellant,

v.

Stephen A. Perry,
ADMINISTRATOR, GENERAL SERVICES ADMINISTRATION,

Appellee.

—————————————————

DECIDED: February 22, 2005

—————————————————

Before LOURIE, RADER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Greenwood Associates, L.P. ("Greenwood") appeals from the decision of the General Services Administration ("GSA") Board of Contract Appeals denying Greenwood's claim for a reimbursement of real estate taxes pursuant to a tax adjustment clause in its lease agreement with the Government. Greenwood Assocs., L.P. v. Gen. Servs. Admin., GSBCA No. 15994 (Dec. 4, 2003). Because the Board properly construed the tax adjustment clause, we affirm.

BACKGROUND

During the time period in question, Greenwood owned a building in Chicago, Illinois that was suitable for office use. In June 1998, the GSA obtained a lease from Greenwood for the Social Security Administration to use that office space. The lease

agreement between Greenwood and GSA contains a tax adjustment clause that provides, in pertinent part, as follows:

> A. The Government shall make annual lump sum payments to cover its share of increases in real estate taxes over <u>taxes paid for the calendar year in which its lease commences</u> (base year). . . . If no full tax assessment is made during the calendar year in which the Government lease commences, the base year will be the first year of a full assessment.

(Lease Agreement, ¶ 2.8) (emphasis added). By the terms of a supplemental lease agreement, the lease commenced on March 13, 2000, and GSA began making monthly rental payments in August 2000. Under the agreement and pursuant to the billing practice of Cook County, Illinois, real estate taxes were payable in arrears, which means that they were payable after the period for which they were assessed. For example, taxes assessed for 1999 were payable in March and October 2000.

The real estate taxes that were assessed for 2000 and that Greenwood actually paid during 2001 increased substantially over those taxes assessed for 1999 and actually paid during 2000. The increase was apparently due to Cook County's periodic and routine reassessment of real estate, presumably performed to better align taxation with the property's current value. Consequently, in October 2001, Greenwood demanded that the Government pay a pro rata share of the increase in the taxes actually paid in 2001, which consisted of the taxes assessed for 2000, over the taxes assessed for 1999 and actually paid in 2000. Greenwood argued that the phrase "taxes paid for the calendar year" in the tax adjustment clause meant taxes paid during or within that particular year. Thus, it asserted that the Government was responsible for a share of the difference between the real estate taxes for 1999, but actually paid in 2000, and the real estate taxes paid in 2001. That would mean that Greenwood would be

reimbursed for the difference between $125,862.38, the taxes assessed for 1999, and $223,153.77, those assessed for 2000.

The Government responded that it was not responsible for that tax increase because the base year when the lease commenced was 2000, not 1999. The phrase "taxes paid for the calendar year" instead meant taxes assessed for that year, not actually paid during that year, and because 2000 was the base year, the tax adjustment clause provided for increases in taxes over that year, 2000, which were payable in 2001, not over the 1999 taxes payable in 2000. In other words, the Government maintained that it was responsible for the increase in real estate taxes over the taxes accrued during the 2000 calendar year, even though they were actually paid in 2001, so that the proper comparison should have been between the taxes actually paid in 2001 and the taxes actually paid in 2002. The Government asserted that Greenwood's argument would hold the Government liable for taxes during a time when it did not occupy the leased property, calendar year 1999, a consequence that it alleged would be illogical. As a result, the Government refused to pay Greenwood, and in May 2002, Greenwood submitted a claim to the contracting officer for reimbursement of the Government's alleged portion of the tax increase over the taxes assessed during 2000.

The GSA contracting officer denied Greenwood's claim, and Greenwood appealed to the GSA Board of Contract Appeals. In December 2003, the Board denied Greenwood's appeal, interpreting the phrase "taxes paid for" 2000 as taxes that are assessed for 2000, not taxes that are paid in 2000 for 1999. The Board thus held that Greenwood was not entitled to payment from the Government for a share of the tax

increase over the year 1999. Greenwood timely appealed; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

DISCUSSION

We review questions of law, including the interpretation of a contract, <u>de</u> <u>novo</u>. <u>Wickham Contracting Co. v. Fischer</u>, 12 F.3d 1574, 1577 (Fed. Cir. 1994). "Whether a contract provision is ambiguous is also a question of law." <u>NVT Techs., Inc. v. United States</u>, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing <u>Cmty. Heating & Plumbing Co. v. Kelso</u>, 987 F.2d 1575, 1579 (Fed. Cir. 1993)). However, we afford careful consideration and great respect to the Board's contract interpretations, given its experience and expertise in interpreting government contracts. <u>Motorola, Inc. v. West</u>, 125 F.3d 1470, 1472 (Fed. Cir. 1997); <u>Cmty. Heating and Plumbing Co. v. Kelso</u>, 984 F.2d 1575, 1579 (Fed. Cir. 1993).

On appeal, Greenwood argues that the tax adjustment clause in the lease agreement is ambiguous. Specifically, it contends that the phrase "taxes paid for" a particular year carries more than one meaning: either taxes paid in respect of that calendar year even if payment is made in the following year, or taxes actually surrendered to the local taxing authority during that calendar year. Because of that alleged ambiguity, Greenwood asserts that the phrase should be construed against the Government and that the Government should be required to pay for the difference between the real estate taxes paid during 2000 and those paid during 2001. Otherwise, Greenwood argues, the Government would be responsible for tax adjustments in the year after it vacates the leased property, leaving Greenwood without leverage as a landlord.

The Government responds that the phrase "taxes paid for" a certain year is not ambiguous and carries a customary meaning in the context of tax payments, because taxes are routinely assessed and paid at different times. It argues that the phrase "taxes paid for" a particular year signifies taxes that are assessed for that year and does not refer to date of actual payment. The Government asserts that Greenwood's argument would hold the Government responsible for taxes assessed for the 1999 calendar year, before it actually occupied the leased property. The Government argues that such a result would be unfounded. Instead, the Government conceded at oral argument that under its interpretation of the contract, it would be responsible for tax adjustments for the final year of the contract even after it leaves Greenwood's property.

We agree with the Government that the phrase "taxes paid for" a specific calendar year is unambiguous. In tax parlance, the phrase "paid for" a certain year refers to taxes accrued during that year, regardless when those taxes are actually paid. Other federal courts have used the phrase in a similar fashion, consistent with that customary meaning. For example, in Apollo Steel Co. v. Commissioner, 4 T.C.M. (CCH) 387 (1945), the United States Tax Court used the phrase "taxes paid for" a particular year to indicate the accrual of taxes during that year, not actual payment of taxes during or within the year:

> Petitioner accrued but did not pay the sum of $10,000 as Pennsylvania State capital stock tax for the year 1941. It deducted that amount as taxes in its 1941 return. In 1942 petitioner was assessed and paid to the Commonwealth of Pennsylvania the sum of $7,243.50 as State capital stock tax for the year 1941. This was the entire amount of such taxes it paid for that year.

Id. at 389 (emphases added); see also, e.g., Charles Schwab Corp. v. Comm'r, 107 T.C. 282, 296 (1996) (discussing whether a petitioner was entitled to a deduction for

04-1286                  5

"taxes paid for" 1987 that were actually paid in 1988). Accordingly, we hold that the contract phrase "taxes paid for the calendar year" in which the lease commenced means taxes accrued in that year, irrespective of when the taxes are actually paid. The phrase does not mean taxes actually paid during that year.

The parties agree that in this contract, the base year is 2000. Accordingly, the tax adjustment clause provides for payment by the Government of increases over the taxes paid for 2000. As we have construed the language "taxes paid for" to mean taxes accrued during the base year, the Government is therefore liable only for increases over the taxes accrued during the base year, 2000, i.e., those paid in 2001, not for increases over taxes paid in 2000, but accrued during 1999.

While the parties agree that 2000 is the base year, Greenwood wants to make the taxes paid in 2000 the base amount so that it can recover for a larger change in real estate taxes. It appears that a periodic reassessment of property value occurred in 2000, creating a substantial increase in taxes, so that the difference between the taxes assessed for 1999 and those for 2000 is much greater than the usual increase. However, the effect of Greenwood's argument would be to hold the Government liable for tax increases over taxes accrued in 1999, the year before the Government occupied the leased property. That result would be unsound and contrary to the intended purpose of the tax adjustment clause: to compensate Greenwood for taxes incurred while the leased office space is occupied by its tenant, the Government.

Greenwood's concern that the construction of the contract that we and the Board have adopted would preclude its recovery of any tax increase in the final year of the contract, but payable after the Government's occupancy has ended, is unrealistic.

Greenwood has not lost its contractual right to claim a portion of any such increase in real estate taxes in the final year of the contract over the 2000 assessment. Rather, under the correct interpretation of the terms of the tax adjustment clause, the Government will be accountable for its share of increases in real estate taxes that are assessed for the final year of its lease over those assessed for 2000, even though they are actually paid in the year after it has vacated the property.

We have reviewed Greenwood's remaining arguments and find them unpersuasive.

## CONCLUSION

Because we agree with the Board's interpretation of the contract phrase "taxes paid for" a calendar year to mean the taxes assessed for and not taxes actually paid during that year, we affirm the Board's decision.

## AFFIRMED