**PARSONS TRANSPORTATION GROUP, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 08–079C.

United States Court of Federal Claims.

Dec. 3, 2008.

George H. Seitz, III, Seitz, Van Ogtrop & Green, P.A., Wilmington, DE, for Plaintiff; of counsel were Michael A. Hordell and Heather Kilgore Weiner, Pepper Hamilton LLP, Washington, D.C.

Timothy P. McIlmail, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director, United States Department of Justice, Washington, D.C.; of counsel was Gareth W. Rosenau, Federal Railroad Administration, Washington, D.C.

## OPINION

DAMICH, Chief Judge.

## I. Introduction

Parsons Transportation Group, Inc. ("Parsons") alleges that the Federal Railroad Administration ("FRA") breached a contract with it[1] when the FRA refused Parsons' requests for indemnification. There is a pro-

vision in the contract, whereby the FRA is required to indemnify Parsons for certain losses exceeding a $1 million deductible. Parsons asserts that covered losses from its payments to other parties have now exceeded $2.4 million.

The case is now before the Court on a set of three motions filed by the Government. First, in Defendant's Motion to Dismiss Counts I, II, and III for Lack of Subject Matter Jurisdiction ("Defendant's Motion to Dismiss"), the Government argues that the first three counts in Parsons' five-count Complaint are time-barred by the Court's six-year statute of limitations in 28 U.S.C. § 2501 (2000). However, that statute does not apply to claims pursued under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601–613 (2000). And Parsons' claims for breach of contract for failure to honor the contract's indemnification clause are covered by the CDA. Accordingly, the Court denies Defendant's Motion to Dismiss.

Next, in Defendant's Motion for Judgment Upon the Pleadings Upon Counts I and III ("Defendant's Motion for Judgment on the Pleadings"), the Government argues that two of Parsons' claimed losses fall outside the scope of the indemnification clause. Parsons disagrees with the Government's interpretation of the contract. The Court denies this motion because the Government has not met its burden of showing that the facts Parsons presents cannot support Parsons' interpretation.

Finally, in Defendant's Motion for Summary Judgment Upon Count III ("Defendant's Motion for Summary Judgment"), the Government argues that Parsons cannot recover an amount paid to settle certain litigation because Parsons released the Government from any liability regarding that matter. Here, the Court agrees and grants summary judgment for the Government on Count III.

## II. Background

In the late 1970s, the FRA awarded Parsons a contract to serve as prime architect-

---

1. Parsons is the successor in interest to Deleuw, Cather Parsons ("DCP"). Compl. ¶ 1. The original contract and many of the relevant events involved DCP. The Court refers to both collectively as "Parsons".

engineer and program manager of the Northeast Corridor Improvement Project ("NECIP"), a project to improve rail facilities. Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 1. Initially, the FRA had issued a letter contract to Parsons in 1976. Negotiations followed and the contract was finalized in October 1979. *Id.* at 2. In Article XIV of the contract, the FRA agreed to indemnify Parsons against certain claims for damages by third parties. Compl. ¶¶ 12–13.

Beginning in the 1980s, Parsons allegedly made payments to satisfy claims asserted against it by other parties. *Id.* ¶¶ 15–32. Parsons claims that those payments and associated fees have now exceeded $2.4 million, surpassing a $1 million deductible that the indemnification provision of the contract requires Parsons to meet. *Id.* ¶¶ 13–32. Following unsuccessful efforts to obtain indemnification in the amount exceeding the deductible, Parsons filed a five-count Complaint in this Court on February 8, 2008. Only the first three counts are addressed by the Government's present motions.

Count I corresponds to the "Stamford claims." Those claims were brought against Parsons by Wilber Smith Associates ("WSA"), which performed engineering services for the design and construction of the Stamford Transportation Center in Stamford, Connecticut. *Id.* ¶¶ 22–23. In 1986, WSA submitted a claim to Parsons "for extra work on the structural elements of the Stamford Station" that resulted from "numerous design defects [ ] discovered in connection with the work." *Id.* ¶ 23. In 1989, an arbitration panel awarded WSA $377,636 plus interest and attorney's fees. *Id.* ¶ 24.

Count II relates to the "A & C Fuel claims." In 1985, a vessel owned by A & C Fuel Corporation collided with the Penn Mainline Bridge, which Parsons had designed under the NECIP. *Id.* ¶ 25. In 1989, Parsons paid $20,833.33 to settle these claims. *Id.* ¶ 26. Parsons' combined attorney's fees for the Stamford Claims and the A & C Fuel Claims (Counts I and II) amounted to $408,002.74. *Id.* ¶ 28.

Count III stems from claims asserted by the Massachusetts Bay Transportation Authority ("MBTA") against Parsons. Under the NECIP, Parsons performed architectural engineering services for the South Station in Boston, Massachusetts in coordination with the MBTA. *Id.* ¶ 30. In 1988, the MBTA sued Parsons for delay damages allegedly incurred by the South Station Project's general contractor, JF White Construction Company. *Id.* ¶ 31. In March 1995, Parsons paid $425,000 to settle the MBTA claims and incurred total expenses, including attorney's fees, of $978,943.43. *Id.* ¶ 32.

### III.  Defendant's Motion to Dismiss

■  The Government argues that Counts I, II, and III must be dismissed for failure to satisfy the six-year statute of limitations in 28 U.S.C. § 2501. Section 2501 limits the Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491. *See John R. Sand & Gravel Co. v. United States,* —— U.S. ——, —— ——, 128 S.Ct. 750, 753–55, 169 L.Ed.2d 591 (2008). But it does not apply to CDA suits. *Pathman Constr. Co. v. United States,* 817 F.2d 1573, 1580 (Fed.Cir.1987) ("Once a contractor elects to proceed under the [Contract] Disputes Act, the six-year statute of limitations in 28 U.S.C. § 2501 is not applicable."). Although the CDA now contains a six-year statute of limitations of its own, that provision does not apply here because this contract was awarded before October 1, 1995. *See Motorola, Inc. v. West,* 125 F.3d 1470, 1473–74 (Fed.Cir.1997). As the Government conceded during status conferences held on August 1, 2008 and October 24, 2008, if the CDA covers Parsons' claims they will not be time-barred and Defendant's Motion to Dismiss must be denied.

Parsons' claims are for breach of contract and are covered by the CDA. Despite the FRA's refusal to consider this claim under the CDA, Parsons' Complaint clearly asserts CDA jurisdiction: "This claim is for breach of contract for the failure of the FRA to honor its obligation, pursuant to Article XIV of the parties' contract, to indemnify Parsons for damages...." Compl. ¶ 3; Compl. ¶ 4 ("This is a civil action brought ... pursuant to the Contract Disputes Act...."). Notwithstanding the language of the Complaint, the Government continually frames this case as a request for indemnification pursuant to

Public Law No. 85–804, 72 Stat. 972 (1958) (codified as amended at 50 U.S.C. §§ 1431– 1435 (2000)). *E.g.*, Def.'s Mot. to Dismiss 2 ("This action is a request for indemnification relief pursuant to Public Law 85–804. . . ."). However, Public Law No. 85–804 is relevant here only insofar as it provided the statutory basis allowing the FRA to agree to indemnification absent appropriated funds.

In certain circumstances, Public Law No. 85–804 permits the President to authorize executive agencies to modify contracts or enter into contracts "without regard to other provisions of law." 50 U.S.C. § 1431. Thus, agencies can sometimes grant contractors' requests for extraordinary relief under Public Law No. 85–804. *See, e.g., McDonnell Douglas Corp. v. United States,* 182 F.3d 1319, 1323 (Fed.Cir.1999) ("[c]ontractors proposed to restructure the contract pursuant to Pub.L. No. 85–804"). Aside from modifying existing contracts, agencies may also utilize the statute to enter into contracts that otherwise would be unlawful. For example, agencies can rely on Public Law No. 85–804 as an exception to the Anti–Deficiency Act, 31 U.S.C. § 1341 (2000), allowing them to agree to indemnify contractors in the absence of appropriated funds. *See The Boeing Co.,* ASBCA No. 54853, 06–1 BCA ¶ 33,270, at 164,891; *cf. Union Pac. R.R. v. United States,* 52 Fed.Cl. 730, 732 (2002) ("plaintiff does not invoke an exception to the Anti– Deficiency Act, so [ ] the contracting officer in this case did not lawfully bind the United States to an open-ended indemnification").

In arguing that Parsons' claims are not covered by the CDA because they relate to indemnification permitted pursuant to Public Law No. 85–804, the Government relies on *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966 (1981). In that case, the Court of Claims stated:

> There is no question that Congress intended to exclude from the operation of the Contract Disputes Act the broadly discretionary settlement authority conferred by laws such as Public Law 85–804. For this reason, we hold that a claim solely and directly based upon 85–804 such as plaintiff's appeal of the denial by the Deputy Chief of Engineers is precluded from con-

sideration under the Contract Disputes Act.

*Id.* at 974–75. However, the context in which the court made that statement in *Paragon Energy* differs materially from Parsons' circumstance. Paragon Energy Corporation had sought to avoid the consequences of its unilateral bid mistake. *Id.* at 967. Paragon alleged that it was entitled to contract modification under the contract adjustment authority contained in Public Law No. 85–804. *Id.* As indicated by a careful reading of the above quotation, what the court decided in *Paragon Energy* was that the CDA did not provide a basis for Paragon to challenge the agency's decision declining to modify the contract under the discretion Public Law No. 85–804 afforded it.

The Government's argument here fails to distinguish between a claim challenging an agency's denial of a request for relief under Public Law 85–804, which is not covered by the CDA, and a claim that the Government is refusing to honor a previously-agreed-upon indemnification provision in a contract, which is not excluded from CDA coverage. In the former circumstance, like in *Paragon Energy,* the plaintiff alleges that the agency has done something wrong by declining to grant the relief it seeks. Although authority conferred under Public Law No. 85–804 allows an agency to grant the relief a plaintiff seeks, the agency has no obligation to do so, and commits no violation of law in declining to grant the relief requested. *See Paragon Energy Corp.,* 645 F.2d at 974–75. That decision is committed to the agency's discretion. *See Murdock Mach. & Eng'g Co. of Utah v. United States,* 873 F.2d 1410, 1413 n. * (Fed. Cir.1989).

On the other hand, here Parsons is alleging that the Government refuses to honor an agreement the two had reached years earlier. Just because that prior agreement invoked Public Law No. 85–804 as the statutory basis allowing the FRA to agree to indemnification absent appropriated funds does not mean that Parsons' claim is transformed into something other than a breach of contract claim. In other words, while it is true that a contractor cannot obtain CDA review of an agency's denial of a request for relief under

Public Law No. 85–804, once the agency has taken an action under Public Law No. 85–804 by, for example, reaching an indemnification agreement unsupported by appropriated funds, a contractor's claim that the government failed to abide by that bargain falls squarely within the CDA.

Stating that the "precise jurisdictional issue" here has not previously been considered by this Court, Parsons asks the Court to consider an Armed Services Board of Contract Appeals decision illustrating the correct approach, from Parsons' point of view: *The Boeing Co.*, ASBCA No. 54853, 06–1 BCA ¶ 33,270. In that case, a contract between Boeing and the Air Force contained an indemnification agreement based on Public Law No. 85–804. *Id.* at 164,883. Boeing claimed that the Air Force refused to honor their indemnification agreement. *Id.* at 164,-887. The board took note of *Paragon Energy*, and appropriately distinguished it: "But a claim for a contract adjustment based 'solely and directly' on Public Law 85–804 is not before us, inasmuch as Boeing nowhere prays for an order directing any executive branch official to 'enter into contracts or into amendments or modifications of contracts ... [or] to make advance payments thereon.'" *Id.* at 164,889.

Here too, a claim based solely and directly on Public Law 85–804 is not before the Court. Rather, Parsons' claim is for breach of a contract provision that happened to have been based on authority conferred to the FRA under Public Law No. 85–804. The CDA covers Parsons' claims. 28 U.S.C. § 2501 does not apply. Defendant's Motion to Dismiss must be denied.

**IV. Defendant's Motion for Judgment on the Pleadings**

■ The Government moves for Judgment on the Pleadings on Counts I and III, arguing that they contain "contract-type claims" not covered by the indemnification provision. A motion for judgment on the pleadings must be denied unless "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Owen v. United States*, 851 F.2d 1404, 1407 (Fed.Cir.1988) (quoting

*Branning v. United States*, 215 Ct.Cl. 949, 950 (1977)). The Court treats each of Parsons' well-pled factual allegations as true and draws all reasonable inferences in Parsons' favor. *See Owen*, 851 F.2d at 1407. Even if Parsons may be unlikely to prevail ultimately, the Court will not grant the Defendant's Motion for Judgment on the Pleadings unless the Government "is clearly entitled to judgment on the basis of the facts as [Parsons] has presented them." *Id.* In this case, the Government has not shown that it is entitled to judgment based on the facts Parsons presents.

Counts I and III stem from claims against Parsons by other parties for design defects and delay. Count I (the "Stamford claims") relates to fees and expenses Parsons incurred in satisfying an arbitration award one of its contractors had won against it due to extra work the contractor performed because of design defects. Compl. ¶¶ 22–24, 48–54. Count III (the "MBTA claims") relates to a settlement Parsons reached with MBTA after MBTA sued Parsons seeking damages for delays. *Id.* ¶¶ 30–32, 62–68.

The Government argues that the indemnification provision does not cover the type of losses Parsons incurred from the Stamford and MBTA claims. The indemnification agreement, Section XIV of the contract, provides:

the Government shall hold harmless and indemnify the A–E Contractor against:

i.  claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A–E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;

ii.  loss of or damage to property of the A–E Contractor, and loss of use of such property but excluding loss of profit; and

iii.  loss of, damage to, or loss of use of property of the Government but excluding loss of profit;

to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is

not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A–E Contractor.

J.A. 25. Section 14.08 defined virtually all risks under the contract to be unusually hazardous:

For the purpose of this Article XIV, it is agreed that all risks, except the risks covered by the A–E Contractor's insurance policies ..., resulting from or in connection with the A–E Contractor's operations under this contract ... and all related services for the Northeast Corridor Improvement Program ... are unusually hazardous risks whether or not the A–E Contractor's liability arises from the design, fabrication, or furnishing of products or services under this contract....

J.A. 28.

The Government argues that the contract's language covers only tort-type claims. Focusing on the phrase "claims ... by third persons ... for death, personal injury, or loss of ... property," *id.* at 25, the Government insists that the scope of the indemnification clause does not include payments Parsons made on claims for design defects and delay. Parsons responds that in this context the phrase "loss of property" includes the money Parsons spent in satisfying other parties' claims against it. Indeed, the notion that "[t]he word 'property' includes money" is not without support. *DeFalco v. Bernas,* 244 F.3d 286, 316 (2d Cir.2001).

According to the facts as Parsons presents them, the FRA agreed to indemnify Parsons against all risks exceeding $1 million that were not otherwise covered by insurance. Pl.'s Br. in Opp'n to Def.'s Mot. for J. on the Pleadings 8. During contract finalization negotiations, the FRA allegedly told Parsons it would not pay for the malpractice insurance coverage Parsons proposed. *Id.* at 1. Instead, Parsons claims that the FRA agreed to include the risks that would have been covered by malpractice insurance within the scope of their indemnification agreement. *Id.* A 1979 memorandum of negotiation that Parsons appended to its Complaint acknowledges that Parsons would not be required to maintain malpractice insurance.App. to Compl. 13.

It is not at all clear that Parsons can prove no set of facts entitling it to relief. Rather, if Parsons succeeds in proving that the circumstances of the contract's formation show that the parties' purpose was to indemnify Parsons against risks that would have been covered by malpractice insurance, Parsons' broad interpretation of the indemnification clause could be appropriate. *See United States v. Winstar Corp.,* 518 U.S. 839, 863, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) ("Words ... are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." (quoting, parenthetically, Restatement (Second) of Contracts § 202(1) (1981))). Defendant's Motion for Judgment on the Pleadings is denied.

## V. Defendant's Motion for Summary Judgment

The Government moves for summary judgment on Count III regarding the MBTA claims, arguing that Parsons released the United States from any claim it might have relating to the 1995 settlement payment for which Parsons now seeks indemnification. Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the U.S. Court of Federal Claims; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it might affect the outcome; an issue is genuine if a reasonable trier of fact could find for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The substance of the March 1995 Release provides:

Upon consideration of a reciprocal release from the United States ... [Parsons] hereby releases and forever discharges the United States ... of and from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all

claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, whether currently known or unknown, which [Parsons] has or may have that arise from or relate in any way to the design and construction, prior to the date of this Release, of renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project"), including, without limitation, matters that arise from or relate to claims or litigation brought against or involving the United States or any other parties in connection with the South Station Project, including, without limitation, claims or litigation brought by or involving the Massachusetts Bay Transportation Authority.

App. to Def.'s Mot. for Summ. J. 3.

Parsons makes three arguments in opposition to summary judgment on Count III. None is convincing. First, Parsons argues that this indemnification claim accrued after the Release was executed and therefore was not covered by the Release. Parsons "did not have [an] indemnification claim that it could release as of . . . the date the Release was executed," the argument goes. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 6. According to Parsons, because the company made its settlement payment after the date it executed the Release, the Release does not preclude Parsons from seeking indemnification now. But as Parsons points out itself, the Release was expressly contemplated in the MBTA Settlement Agreement between all of the parties involved in that litigation. The Settlement Agreement "provided that prior to the Settlement Agreement becoming effective and the required payments thereunder being made, the FRA and [Parsons], among others, were required to execute reciprocal releases." *Id.* at 5. So Parsons executed its Release in favor of the FRA. Then Parsons made its payment to MBTA, and the Settlement Agreement became effective. It is obvious to the Court that the Release covered the claim Parsons now asserts.

Parsons next asserts that the Release did not relieve the FRA's indemnification obligation because the Release was a condition precedent to the settlement. *Id.* at 8. There is no question that the Release was a condition precedent to the settlement. But the next step in Parsons' reasoning—that because the Release was a condition precedent to the settlement it did not cover a claim against the FRA for indemnification—does not follow. Parsons claims that it agreed to the Release only in an effort to limit the liability that the FRA would ultimately be responsible to Parsons for. However, the unambiguous language of the Release indicates otherwise. Parsons released every potential claim it could have against the FRA stemming from the MBTA litigation that was then being settled, leaving no allowance for this indemnification claim.

Finally, Parsons argues that genuine issues as to material facts exist, precluding summary judgment. *Id.* at 9–11. Parsons urges the Court to consider the context in which the Release was executed, and insists that further discovery might reveal that the parties did not intend for the Release to cover this indemnification claim. "At the very least," Parsons states, "the Release and related Settlement Agreement raise questions of fact over the parties' contractual intent precluding summary judgment." *Id.* at 10. The Court disagrees. Neither the Release nor the Settlement Agreement raises a genuine issue as to the parties' intent. To the contrary, the language of those documents leaves no doubt that Parsons did promise not to pursue any claim against the FRA relating to the MBTA litigation. The Government is entitled to summary judgment on Count III.

## VI. Conclusion

Defendant's Motion to Dismiss and Defendant's Motion for Judgment on the Pleadings are DENIED. Defendant's Motion for Summary Judgment on Count III is GRANTED.