ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Expresser Transport Corporation | ) ASBCA No. 61464 |
| | ) |
| Under Contract No. N00033-82-C-1013 | ) |

APPEARANCE FOR THE APPELLANT:  Patrick H. McCaffery, Esq.
                               General Counsel

APPEARANCES FOR THE GOVERNMENT:  Craig D. Jensen, Esq.
                                  Navy Chief Trial Attorney
                                 Robert R. Kiepura, Esq.
                                  Senior Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MELNICK
GRANTING SUMMARY JUDGMENT FOR THE GOVERNMENT

This is an appeal from the government's denial of an indemnification claim. Because the claim was waived by the contract's express terms, summary judgment is granted to the government and the appeal is denied. The following facts are undisputed.

In 1983, the contractor, Expresser Transport Corporation, and the United States entered into the time charter contract identified above (which was then amended and restated in 1985) for the Military Sealift Command (MSC) to hire MV *1st Lt Alex Bonnyman* to support the prepositioning of military equipment and supplies (compl. ¶¶ 1-2; R4, tab 1 at 1-6, 55).[1] The 145-page agreement (not counting annexes) contained extremely detailed language governing the parties' relations, obligations, and responsibilities (R4, tab 1). Consistent with the nature of a time charter, Expresser remained responsible for operating the ship, which it contractually accomplished through its parent company, Maersk Line, Limited (compl. ¶ 1; R4, tab 1 at 6). However, the government could place civilian contractors aboard for communications and cargo maintenance (compl. ¶ 3; R4, tab 1 at 77). The government agreed to "indemnify [Expresser] for liabilities resulting from the carriage of such personnel" (compl. ¶ 4; R4, tab 1 at 78).

---

[1]  While discussing the vessel bearing his name, it is worth noting that Lt Bonnyman was a United States Marine posthumously awarded the Congressional Medal of Honor for heroic actions in 1943 during the battle of Betio Island, Tarawa. *See* http://www.marinemedals.com/bonnymanalexander.htm.

Article 38 of the charter was entitled "WAIVER OF CLAIMS." It stated:

> All claims whatsoever for moneys due the Contractor under this Charter must be submitted in accordance with the applicable Military Sealift Command billing instructions within two years of the date of redelivery of the Vessel, except as otherwise provided in Article 44(a). Except as so provided, all claims not submitted within the two-year limit shall be deemed to have been waived by the Contractor.

(R4, tab 1 at 120)[2] The charter also incorporated Defense Acquisition Regulation (DAR) 7-103.12, DISPUTES (JUN 1980) (R4, tab 1 at 149). This clause stated the charter was "subject to the Contract Disputes Act of 1978 (P.L. 95-563)" (CDA), and in relevant part described the procedures for pursuing a claim. *See Santa Fe Eng'rs, Inc.*, ASBCA No. 36292, 92-2 BCA ¶ 24,795 at 123,677.[3]

On May 11, 2007, a government contract employee stationed aboard *Bonnyman* suffered an injury leaving him a paraplegic. In June of 2008, the employee filed suit in the United States District Court for the Southern District of Ohio against, among others, the government and Maersk. (Compl. ¶¶ 5-6) The complaint sought damages for maintenance, cure, wages, attorney fees, and punitive damages (R4, tab 2). Expresser was added as a defendant by an amended complaint (R4, tab 5.18).

The charter was terminated by the government for its convenience on July 15, 2009 (compl. ¶ 2). Neither party disputes that *Bonnyman* was redelivered on that date (gov't mot. at 4; app. opp'n at 4).

In May of 2010, the district court dismissed the government from the employee's suit (compl. ¶ 7). On March 21, 2011, the employee settled with Expresser and Maersk, releasing them from liability in exchange for $2,500,000 (compl. ¶ 9; gov't mot. ¶ 7). Slightly less than six years later, on March 15, 2017, Mr. Steven E. Hadder, President of Expresser and Vice President of Maersk, submitted a certified claim to the contracting officer seeking $2,782,088.62 in reimbursement for the settlement and for legal fees (compl. ¶ 10; R4, tabs 3-4). Mr. Hadder contended that Expresser and Maersk were entitled to recover based upon the government's indemnification of Expresser for liabilities

---

[2] Article 44(a) contained exceptions neither party contends are relevant here (R4, tab 1 at 139).
[3] The Board requested the government to provide a copy of the actual clause as it existed in 1980, but it was unable to do so. *Santa Fe Engineers* recites its relevant portions.

2

resulting from the carriage of private civilian contractors aboard *Bonnyman*. The contracting officer denied the claim on October 3, 2017 (R4, tab 3). This appeal followed.

## DECISION

I.  *The Merits*

The government moves to dismiss the appeal for failure to state a claim upon which relief may be granted.[4] Because the parties rely upon statements and materials outside the pleadings, the motion is treated as one for summary judgment.[5] *See* FED. R. CIV. P. 12(d). Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The government's argument is fairly simple. Article 38 of the charter stated that "[a]ll claims...for moneys due...under [the] Charter must be submitted in accordance with the applicable Military Sealift Command billing instructions within

---

[4]  The claim letter opens by referring to Maersk as MLL. Later it states that "Expresser and MLL are hereinafter referred to collectively as 'MLL.'" Mr. Hadder's certification, located at the end of the letter, included the statement "that the amount requested accurately reflects the contract adjustment for which MLL believes the Government is liable; and that I am duly authorized to certify the claim on behalf of MLL." By order issued September 18, 2018, the Board inquired of the parties whether this language complied with the reference to "contractor" contained in 41 U.S.C. § 7103(b)(1)(C).

In response, the government advances a request to dismiss the appeal for lack of jurisdiction, observing that Maersk is not the contractor and suggesting that "[t]he fact that the letter indicates that the claim was being certified by 'MLL,' meaning Maersk, means that the claim contains no certification at all" (gov't resp. to Bd. inquiry dtd. Oct. 4, 2018 at 4). That request is denied. The claim was certified by Mr. Hadder, who declared himself the President of Expresser. Prior to the section of the letter containing the certification, the letter stated that "MLL" referred collectively to Expresser and Maersk. Thus, Mr. Hadder's reference to MLL in the certification includes the contractor, Expresser. The certification complies with 41 U.S.C. § 7103(b)(1)(C). (R4, tabs 3-4)

[5]  Prior to this decision the Board notified the parties that it was considering treating the motion as one for summary judgment because the parties relied on materials outside the pleadings. The Board invited them to present any pertinent additional material. Expresser's supplemental submission is discussed below in the section on discovery.

two years of the date of redelivery of the Vessel." Additionally, "[e]xcept as so provided, all claims not submitted within the two-year limit shall be deemed to have been waived by the Contractor." *Bonnyman* was redelivered on July 15, 2009, and therefore any money claim was waived unless submitted by July 15, 2011. Expresser's March 15, 2017 claim for indemnification was therefore waived.

Expresser responds that the government's reliance upon Article 38 presents an "unacceptable result." Because it is conceivable that a claim against it might not have been resolved until more than two years after *Bonnyman* was redelivered, a claim by Expresser for indemnification might not have accrued within Article 38's allowed time period. It notes that a claim cognizable under the CDA cannot "'accrue' until the amount of the claim, 'a sum certain,'...is 'known or should have been known.'" *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 627 (Fed. Cir. 2016) (quoting FAR 2.101). Expresser argues it cannot be the case that it agreed to waive potential claims that might not have accrued before Article 38's deadline. Such a result would deny it recourse under the CDA, which it says conflicts with the Board's decision in *Ikhana, LLC*, ASBCA No. 60462 *et al.*, 17-1 BCA ¶ 36,871. Citing *Reflectone v. Dalton*, 60 F.3d 1572, 1577 (Fed. Cir. 1995) (en banc), Expresser alleges that it functioned under the "assumption" that Article 38 only restricted the time within which "routine" requests for payment could be submitted. It implies that its indemnification claim is not routine and therefore not restricted by Article 38. According to Expresser, all that limits the submission of its indemnification claim is the doctrine of laches.[6]

"A contract must...be construed as a whole and 'in a manner that gives meaning to all of its provisions and makes sense.'" *Bell Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014) (quoting *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). The relevant portions of the charter are its provision permitting government contract personnel to serve aboard *Bonnyman*, the government's promise to indemnify Expresser for liabilities resulting from the carriage of such personnel, and Article 38, stating that "[a]ll claims...for moneys due" Expresser under the charter "must be submitted...within two years of the date of redelivery" of *Bonnyman*. All "claims not submitted within the two-year limit shall be deemed to have been waived by" Expresser. Expresser suggests DAR 7-103.12(b) is also relevant.

---

[6] The parties agree that the CDA's own six-year limit upon the submission of claims, provided now at 41 U.S.C. § 7103(a)(4), does not apply. That statutory provision had not been enacted in 1985 at the time the restated charter was executed, and is not retroactive. *See Motorola, Inc. v. West*, 125 F.3d 1470 (Fed. Cir. 1997).

4

The sensible meaning of all the charter's relevant provisions is that the government indemnified Expresser for liabilities resulting from the carriage of government contract personnel. However, the government's exposure to such claims was not open ended. Claims not submitted by Expresser within two years of *Bonnyman*'s redelivery were waived. That Expresser may now find Article 38 "unacceptable," because it waived claims that might not have accrued before the deadline, does not change what it agreed to. It is far from surprising that the charter's comprehensive treatment of the parties' rights established a firm date beyond which any claims for money due would not be viable. As Expresser observed, claims made against it could take an indeterminate amount of time to resolve, potentially delaying the accrual of its own claims upon the government for indemnification for an unknown period. By limiting that exposure, Article 38 is comparable to a statute of repose, which "cuts off a cause of action at a certain time irrespective of the time of accrual." *Weddel v. Sec'y of Health and Human Servs.*, 100 F.3d 929, 931 (Fed. Cir. 1996). Contrary to Expresser's suggestion, nothing in DAR 7-103.12(b) conflicts with this conclusion. That provision merely stated that "all disputes arising under or relating to [the charter] shall be resolved in accordance with this clause." It did not forbid the contractual expiration of Expresser's right to seek payments under the charter.

Notably, the scenario Expresser suggests is objectionable about Article 38, that its indemnification claim could have been waived before it accrued, did not happen. The parties disagree over when Expresser's indemnification claim accrued, with the government contending it occurred on the date the employee was injured in May of 2007, and Expresser maintaining that the sum certain it seeks could not be known until it settled with the employee on March 21, 2011. There are other possible dates in between that could apply. However, even if Expresser's March 21 date is correct, it had from then until July 15 to submit a claim to the contracting officer before it was waived. Expresser does not suggest it could not do so.

Expresser represents that it assumed Article 38 only applied to "routine" requests for payment, implying its indemnification claim is not routine. However, it presents no tangible evidence that it interpreted the charter that way. Mere argument by its attorney is not evidence. *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009). Moreover, even if Expresser had submitted otherwise competent extrinsic evidence of the charter's meaning, it would be irrelevant given that Article 38 is unambiguous. *See Auto. Mgmt. Servs. FZE*, ASBCA No. 58352, 15-1 BCA ¶ 36,119 at 176,329 (holding the Board does not consider extrinsic evidence to interpret an unambiguous contract). Nothing in it or any other part of the charter limited the waiver provision merely to "routine" requests for payment.

Also, Expresser's reliance upon *Reflectone* to establish the distinction it proposes is misplaced. *Reflectone* holds that a written demand seeking the payment of money as of right need not already be in dispute when submitted to the contracting

5

officer to constitute a CDA claim, except if it is a voucher, invoice or other routine request for payment. *Reflectone*, 60 F.3d at 1577. If Expresser is correct that its claim is non-routine (and the government does not contest that assertion) than that simply means it was ripe for submittal to the contracting officer regardless of whether it was previously in dispute. *Reflectone* does not govern the merits of a claim or restrict the parties from agreeing to the conditions of its waiver.

*Ikhana* does not favor Expresser either. There, a contractor purported to assign to its surety its "contract rights," after which the surety attempted to dismiss the contractor's appeal to this Board and release the government from all claims. The Board rejected the idea that such an assignment could preclude the contractor from exercising its statutory right of appeal to this Board. Noting the CDA is intended to equalize the parties' bargaining power by guaranteeing at least one impartial review of contracting officer decisions, the Board observed that "[p]ermitting parties to contract away Board review entirely would subvert this purpose." 17-1 BCA ¶ 36,871 at 179,731 (quoting *Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 859 (Fed. Cir. 1997)). The statutory right to appeal from contracting officer final decisions is unwaivable. *Id.*

Article 38 does not waive any of Expresser's statutory rights, much less its right to appeal to this Board. Thus, this appeal is here. Article 38 places substantive limitations upon Expresser's contract rights by waiving claims not submitted within two years of vessel redelivery. Nothing in *Ikhana*, or any other authority cited by Expresser, forbids the parties from arranging their contractual relationship in this manner.

II. *Discovery*

In its supplemental submission, Expresser argues that "several genuine issues of material fact exist which Expresser should be permitted to examine in the course of discovery" (app. supp. br. at 4). In particular, it seeks discovery into whether the MSC billing instructions with which claims had to be in accord under Article 38 support its position that an indemnification claim is not within the scope of Article 38. It suggests the meaning of the article is a genuine issue of material fact. Expresser also implies it needs discovery into other issues, including whether its claim accrued when the contractor employee was injured, whether there is a factual basis "for the Government's defense of laches" (*id.* at 7), and whether its CDA certification is defective.

"In deciding motions for summary judgment, the Board looks to Rule 56 of the Federal Rules of Civil Procedure for guidance." Board Rule 7(c)(2). Federal Rule of Civil Procedure 56(d) provides that a court may allow time for discovery if the nonmoving party shows by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" to the motion. Expresser has not met the threshold requirement for an affidavit or declaration making the showing required by Rule 56(d). *See Brubaker Amusement Co. v. United States*, 304 F.3d

6

(among other reasons, rejecting appeal from denial of discovery before summary judgment given that there was no affidavit).[7]

Furthermore, summary judgment need not be deferred or denied to permit discovery based upon a mere speculative hope that a claimant might find evidence to support its case. *Brubaker Amusement*, 304 F.3d at 1361. Though it does not have to be clairvoyant, Expresser must "state with some precision the materials [it] hope[s] to obtain with further discovery, and exactly how [it] expect[s] those materials would help [it] in opposing summary judgment." *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993)). Expresser is not "allowed to conduct discovery that has no chance of leading to the denial of summary judgment for" the government. *Jianglin Zhou v. United States*, 727 F. App'x 651, 654 (Fed. Cir. 2018) (quoting *RQ Squared, LLC v. United States*, 119 Fed. Cl. 751, 758 (2015)). Nor is it enough to imply that "something will turn up." *Simmons Oil*, 86 F.3d at 1144.

Expresser is clear enough that it seeks to take discovery about the MSC billing instructions applicable to Article 38 claims, but it is far less apparent what they might reveal to help its case. It speculates they might "support Expresser's contention that the 2-year limitation in Article 38...does not bar the submission of a claim for indemnification." It suggests they might say that an indemnification claim need not be submitted under them. Expresser provides no explanation as to why it expects they might say that. Indeed, Article 38's scope was unlimited. It applied to "[a]ll claims whatsoever for moneys due the Contractor under this Charter" and it required them to be "submitted in accordance with applicable...billing instructions within two years of the date of redelivery" (R4, tab 1 at 120). Though the billing instructions might dictate the procedures for submitting claims, Article 38 did not provide any basis for them to carve out a class of claims for moneys due that could be excluded from its time limits. Thus, even if the Board were to look past Expresser's failure to present an affidavit or

---

[7] *Brubaker Amusement* addressed Rule 56(g) of the Rules of the United States Court of Federal Claims as they existed at that time. That rule was substantively similar to the current version of Federal Rule of Civil Procedure 56(d), stating:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or deposition to be taken or discovery to be had or may make such other order as is just.

*Brubaker Amusement*, 304 F.3d at 1361 n.4.

declaration, Expresser's reasons for seeking the billing instructions rely upon flawed logic, do not rise above the level of a speculative hope, and amount to little more than the suggestion that something might turn up.

The remaining three reasons Expresser gives for seeking discovery are even less compelling. First, there is no need for discovery into whether Expresser's claim accrued when the contractor employee was injured, as the government contends. As explained above, assuming Expresser's claim accrued as late as March 21, 2011, as it suggests, the claim was still waived by the time Expresser submitted it in 2017. Second, contrary to Expresser's suggestion, the government has not premised its motion upon the defense of laches. Third, the government's motion to dismiss based upon the absence of a certification has been denied. Accordingly, discovery for the purposes of these last three reasons has no chance of leading to the denial of summary judgment for the government. Expresser's request to take discovery is therefore denied.

## CONCLUSION

Summary judgment is granted in favor of the government. The appeal is denied.

Dated: December 7, 2018

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61464, Appeal of Expresser Transport Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals